<em>Hartford,</em><br>June, 1836.<br><br>Lyman<br><em>v.</em><br>Hale.

It is urged, that land comprehends every thing in a direct line above it ; and therefore, where a tree is planted so near the line of another's close that the branches overhang the land, the adjoining proprietor may remove them. And in support of this position, a number of authorities are cited. The general doctrine is readily admitted ; but it has no applicability to the case under consideration. The bill of exceptions finds, that the defendant gathered the pears growing on the branches which overhung his land, and converted them to his own use, claiming a title thereto. And the charge to the jury proceeds on the ground that he has a right so to do. Now, if these branches were a nuisance to the defendant's land, he had clearly a right to treat them as such, and as such, to remove them. But he as clearly had no right to convert either the branches or the fruit to his own use. *Beardslee* v. *French*, 7 *Conn. Rep.* 125. *Welsh* v. *Nash*, 8 *East* 394. *Dyson* v. *Collick*, 5 *Barn. & Ald.* 600. (7 *Serg. & Lowb.* 205.) 2 *Phill. Ev.* 138.

On the whole, we are of opinion, that there is manifest error in the judgment of the court below, and that it be reversed.

The other Judges ultimately concurred in this opinion ; WILLIAMS, Ch. J. having at first dissented, on the ground of a decision of the superior court in *Hartford* county, (*Fortune* v. *Newson*,) and the general understanding and practice in *Connecticut* among adjoining proprietors.

Judgment reversed.

---

## THE TALCOTT MOUNTAIN TURNPIKE COMPANY *against* MARSHALL and others.

A vehicle on four wheels, drawn by four horses, constructed and used like the common stage coach, is a four wheeled *pleasure carriage* within the charter of the *Talcott Mountain Turnpike Company*, and as such, is subject to the toll of 25 cents at each of the gates.

*Hartford,*
*June, 1836.*

Talcott Moun-
tain Turnpike
Company
*v.*
Marshall.

The distinction between pleasure carriages and others, in the charters of turnpike companies in this state, is, that the former are designed and used for the transportation of *persons*, and the latter for the transportation of *burdens*.

THIS was an action of *assumpsit* to recover tolls for the passing on the road of the plaintiffs of "a certain travelling four-wheeled pleasure carriage and horses" from the 1st of *January*, 1835, to the 28th of *July*, 1835.

In *May*, 1798, the plaintiffs were incorporated for the purpose of establishing and keeping in repair a turnpike road from the *West* line of the city of *Hartford*, through the towns of *Farmington* and *Simsbury*, [now *Avon* and *Canton*,] to the dwelling-house of *Eldad Shepard*, in *New-Hartford*. The charter gave the plaintiffs the general powers usually granted to turnpike companies ; authorized them to establish two gates on their road, at places specified ; and to demand and receive, among other tolls, the following :

|  | Cents. | Mills. |
|---|---|---|
| "For every four-wheeled travelling pleasure carriage and horses, | 25 | 0 |
| Every chaise, chair and sulkey, | 12 | 5 |
| Every loaded wagon or cart, | 12 | 5 |
| Ditto empty do. | 6 | 3 |
| Every single horse cart, | 6 | 3 |
| Ditto empty do. | 4 | 0 |
| Every pleasure sleigh, | 6 | 3 |
| Every loaded sleigh or sled, | 6 | 3 |
| Ditto empty do. | 4 | 0 |
| Man and horse, | 4 | 0 |
| Horses, cattle and mules, each, | 2 | 0." |

The plaintiffs became organized as a turnpike company according to the provisions of the charter ; made the road and put it in complete repair, at the expense of more than 8000 dollars ; and erected two turnpike gates on the road, at which they were entitled to receive the several tolls allowed by the charter. The defendants were owners of a vehicle on four wheels, drawn by four horses, known and called by the name of a stage, or stage coach, constructed and used like the common stage coach in this state. Such a vehicle was driven, by the defendants' agent, through one of the gates 218 times, car-

rying a mail, in the usual manner, 114 of those times, and through the other gate 669 times, carrying the mail 502 of those times.

*Hartford,*
*June, 1836.*

Talcott Mountain Turnpike Company
*v.*
Marshall.

A case embracing these facts, together with the charter of the company, was agreed to, by the parties, and reserved for the advice of this court, on the question whether the plaintiffs were entitled to a recovery, and if so, to what amount.

*W. W. Ellsworth,* for the plaintiffs, contended, That the vehicle owned by the defendants and used on the plaintiffs' road, was a "pleasure carriage" within the charter, and subject to the toll of 25 cents. In support of this proposition, he insisted,

1. That the legislature had recognized only two classes of vehicles, for summer or winter, those for the transportation of *persons,* and those for the transportation of *merchandize.* The former are *pleasure* carriages; the latter are not. Throughout the legislation on this subject, the class for persons is taxed higher than the other. The construction and general use of the vehicle decide its character and to which of the two classes it belongs. It is immaterial what sensation is excited by its motion; and equally immaterial, whether it has many passengers, or few, or none at all. But carriages other than pleasure carriages, are subdivided into two classes, *loaded* and *empty;* the former being subject to a higher toll than the latter. Thus, sleighs are divided into two general classes; *pleasure* sleighs, subject to a toll of 6 cents, 3 mills, and other sleighs, which, if loaded, are subject to the same toll, but if not loaded, to only 4 cents. One class is designed for the transportation of *persons;* the other of *merchandize.*

2. That the import of the term "stage" or "stage coach," does not exclude the vehicle from the class of pleasure carriages. It is "a coach that runs by stages; or a coach or other carriage running regularly from one place to another, for the conveyance of passengers." *Webster's Dict. in verb.*

3. That unless this vehicle is to pay toll as a pleasure carriage, it is not to pay at all. Now, this is not to be supposed. No reason appears why the legislature should exempt such a vehicle as this from toll. Probably, when this charter was granted, stage coaches were not in as common use as they now are. They have since almost entirely superseded *private* carriages; and now all ride together in *one pleasure* carriage.

*Hartford,*
*June, 1836.*

Talcott Moun-
tain Turnpike
Company
*v.*
Marshall.

The road is as much, (and indeed more,) injured, by it, whirling through the mud at all times, as by private coaches.

4. That the construction claimed by the plaintiffs, is settled, by the cases of *The Middletown Turnpike Company* v. *Wentworth,* 9 *Conn. Rep.* 373. and *Moss* v. *Moore,* 18 *Johns. Rep.* 128.

5. That this construction is fortified, by a recurrence to the rates of toll in the charters of other turnpike companies, granted about the same time as that of the plaintiffs. From 1792 to 1806 forty charters of turnpike companies were granted by the legislature of this state. [Here the counsel exhibited abstracts from the charters referred to, stating the rates of toll allowed.] If the term *pleasure carriage* does not include a stage coach, then eighteen of them do not tax *vehicle* or *horses* at all. In five, the words used are, "all four-wheeled pleasure carriages, *except* a stage carrying a mail." But why except a stage, under particular circumstances, if stages are not covered by pleasure carriages? In sixteen, stages are mentioned specifically; but they are put at the same rate of toll (25 cents,) with pleasure carriages on four wheels. In ten, "stage carrying the mail," is classed by itself, and put at a lower rate. In one, which is the last but one of these charters, and has been the subject of judicial decision, (*The Middlesex Turnpike Company* v. *Wentworth,*) the words are "pleasure carriage *or* stage."

*Hungerford* and *Parsons,* for the defendants, contended, 1. That no tolls are collectible at the plaintiffs' gates, except such as are expressly provided for, by their charter. The road is a public highway, and was constructed for common use. The contract between the government and the company was, that they might make it for the tolls specified; and they, by accepting the charter and making the road, do it upon those terms. On general principles, the charter is to be expounded liberally in favour of the public, and strictly as to the company. 3 *Kent's Com.* 348. *East-Haven* v. *Hemingway,* 7 *Conn. Rep.* 199. *Middletown* v. *Sage,* 8 *Conn. Rep.* 221. *Hollister* v. *The Union Company,* 9 *Conn. Rep.* 440. *Higinbotham* v. *Perkins,* 15 *Petersd. Abr.* 119.

2. That in this charter, there is no provision extending to stages, or stage coaches, unless they are comprehended under

the denomination of "pleasure carriages;" and they are not thus comprehended under that name; because, in the first place, in other charters granted at the same session of the General Assembly, and before, distinct provisions are made for pleasure carriages and stages.

Secondly, the *form* and *use* of these different sorts of vehicles, are essentially different. *The Middlesex Turnpike Company* v. *Wentworth,* 9 *Conn. Rep.* 371.

Thirdly, the terms *stage* and *pleasure carriage,* in their popular use, (which may be properly resorted to and ought to govern, in the construction of the charter,) have very different meanings. If a person were to say, he was going to another place in a pleasure carriage, no one would understand that he meant to take the stage. If he were to say, that he was going to take an excursion on the water in a pleasure boat, no one would suppose that he meant to go in the steam-boat. A railroad car is a vehicle for the transportation of passengers; but who ever called it a pleasure carriage? It may be difficult for the unlearned—and perhaps for the learned also—to give a precise and exact definition of the terms in question; but every body understands, that they import different things.

3. That the reason why in some charters, "stage," or "mail stage," is mentioned, and in others not, is, that when those charters respectively were granted, the stage run and the mail was carried on some of these routes, and not on others.

4. That it might have been an object with the legislature to encourage the running of mail coaches on this road; and this may have been the reason why they were not made subject to toll. On this ground, the legislature, at the same session at which the plaintiffs' charter was granted, allowed a toll of 6 cents, 2 mills, only, on mail stages, while it imposed a toll of 25 cents on four wheeled pleasure carriages, in the charter of *The Derby Turnpike Company.* See 10 *Conn. Rep.* 523.

HUNTINGTON, J. The charter of incorporation, which, by the agreement of the parties, is made a part of the case, authorizes the plaintiffs to demand and receive these among other tolls: "For every four-wheeled travelling pleasure carriage and horses, 25 cents." [For other tolls, see the statement of the case, *ante, p.* 186.]

The carriage used by the defendants, and for which payment

*Hartford,*
*June, 1836.*

Talcott Mountain Turnpike Company
*v.*
Marshall.

of toll is demanded, is described in the case stated, as "a vehicle on four wheels, drawn by four horses, known and called by the name of the stage, or stage coach, constructed and used as is the common travelling stage coach in this state." It is a carriage designed to carry persons and their baggage, and so built as to effect that object. Its construction is adapted to the transportation of passengers, in a safe, convenient and easy manner. Such is the design with which it was built; such the use to which it was to be, and has been, applied.

It was very properly conceded, at the bar, that the plaintiffs are not entitled to judgment, unless such a vehicle or carriage, is a " pleasure carriage," within the meaning of their charter : and the record, therefore, presents for our advice, the question, whether this stage coach is wholly exempt from the payment of toll, or whether it is a *pleasure carriage,* as that term is used in the act ?

It is insisted, on the part of the defendants, that a stage coach is not named in the grant to this company; that the omission to insert it, as one of the subjects of toll, may have been the result of accident or design ; that the road was made for common use, and the contract implied in the grant, is merely, that the plaintiffs shall have right to claim payment of the tolls specifically mentioned ; that the imposition of toll is against common right, and the act authorizing it, is to receive a liberal construction in favour of the public, and a strict interpretation when applied to the company ; that a stage is not a pleasure carriage, whether reference be had to its construction, use, or the ordinary acceptation of the term ; that it is, at least, a phrase of doubtful meaning, and the benefit of such doubt is to be given to the public.

That grants of this character, are to be construed most favourably for the public, and against the grantee, when reasonable doubts exist as to the extent of the privileges conferred by them, is admitted. *Middletown* v. *Sage,* 8 *Conn. Rep.* 222. *Hollister* v. *The Union Co.,* 9 *Conn. Rep.* 436. The imposition of toll is in the nature of a tax on the public ; and where the meaning of the act is doubtful, the court will incline to that construction which will have the effect of relieving the people from a burden.

We think, however, that the well established and salutary rules of construction adopted for the purpose of ascertaining

*Hartford,*
June, 1836

Talcott Mountain Turnpike Company
*v.*
Marshall.

*what is* the expressed will of the legislature in the grant which they have made, are not to be overlooked or disregarded, because the grantees are a *corporation.* We do not perceive, in the present case, such reasonable doubts as to the extent of the franchise granted, as require us to adopt " any strained principle of interpretation." We apply the same rule, which was made the basis of the judgment of this court, in *East-Haven* v. *Hemingway,* 7 *Conn. Rep.* 186. " In expounding this legislative grant, the meaning and intention of the General Assembly, is to be derived from a fair interpretation of their expressions." The words used in it, are to be construed according to their plain meaning, with reference to the subject matter. A stage coach, like the pleasure carriage of a private gentleman, is built for the accommodation of *persons,* and not the transportation of *merchandize.* In this particular, there is no difference between them. The use to which they are both applied, is the same. They may vary in their construction, according to the different tastes of their respective owners; and they do vary, sometimes in the materials of which they are built, generally in their external form and internal arrangement, and perhaps universally, in their strength and solidity. The stage is constructed with a view to the accommodation of *many* persons and their luggage ;—to be used on rough, as well as on smooth, roads—at all seasons of the year, and in every variety of weather. Strength and durability, as well as the comfort and convenience of the passenger, are consulted in the form, the materials, the size and the whole structure of the vehicle. It is so built, as to give the owner the best opportunity to make profits from the employment for which it is designed, and at the same time, to afford the traveller, a safe, convenient and pleasant mode of conveyance. The private individual keeps his coach to be used by himself, his family or friends, as his business may require, or his pleasure dictate. Its principal use consists in the conveyance of persons ;—for that purpose it is built, and to that object it is mainly devoted. It is not the less a " pleasure carriage," because it carries the baggage of the owner, when on a journey ; nor does it lose its distinctive characteristic, when the *business* pursuits of its owner require its use. It is equally a pleasure carriage, whether he rides in it for health, amusement, recreation, or business, and with or without luggage. The object for which it was built,

*Hartford,*
*June, 1836.*

Talcott Mountain Turnpike
Company
*v.*
Marshall.

and the use to which it is ordinarily applied, give to it the character of a pleasure carriage, or the reverse. If it is constructed for the more easy and convenient transportation of the person of the owner, and is employed with reference to this original design, it is obviously a pleasure carriage, although it may never be used, solely, for the purposes of pleasure and amusement. It would, we think, be a novel ground of exemption from the payment of toll, that a gentleman was travelling in his coach, to fulfil a business engagement ;—or with much luggage ;—or with so many friends, that all had experimental evidence that the vehicle was not a *pleasure* carriage. If the criterion of liability to pay toll, is, either the object of the owner of the private coach in travelling, at the particular time when he is required to pay it, or in the pleasure or pain which he experiences from the journey, or from the weight of the luggage which he deems it necessary to carry, it would be a very uncertain and indefinite criterion, one not easily reduced to practice ; it would open a wide door to frauds on the turnpike company, who have no means of knowing or ascertaining whether the exemption claimed ought to be allowed, and in effect, would render the franchise of no value. *Lewis* v. *Hamond*, 2 *Barn. & Ald.* 206. *Harrison* v. *Brough*, 6 *Term Rep.* 706. We cannot doubt, therefore, that a private coach, built and used for the conveyance of persons, is a pleasure carriage, although in its actual use, pleasure may be neither designed nor realized. A stage coach is a carriage built and designed to accommodate persons who wish to pass from place to place. It is offered to them, as a cheap, easy and convenient mode of travelling. It is, oftentimes, the most economical, expeditious and agreeable mode of conveyance. And its proprietors, while they hope to enjoy a fair profit from this employment, confer a favour on the public. The stage, like a private coach, is built for the purpose of transporting persons ;—is used for that purpose, and constructed with reference to their comfort, pleasure and convenience, as well as the profit of the proprietor. Those who travel in it, do so for the purposes either of business, amusement or health ; and whether the object be one, or more, or all of these ; or whether they travel with or without luggage ; the vehicle they use, is still one designed for the conveyance of their persons, and to that purpose appropriated. It is true, the *private* carriage is used by the *owner ;* and therefore, no re-

ward is paid, *eo nomine*, for its use, while the *stage* conveys passengers for *hire*. In this respect, they differ;—but this fact cannot alter either the form, use or name of the vehicle; nor can it vary the liability to the payment of toll; for if so, a private carriage, *when let to hire*, would be exempted; and surely, it cannot be admitted, that the coach of the wealthy citizen is to be charged with toll when conveying its owner, and exempted when he is deriving a profit from its use, by letting it for a reward. In both cases, it is a pleasure carriage. It is also true, a stage, or stage coach is a carriage which runs regularly from one place to another; in which respect it differs from a private coach. This, however, cannot make it the less a *pleasure* carriage. The same may be said of the coach of an individual, which may be, and sometimes is, employed regularly in conveying its owner from his place of residence to his place of business, and back again, in different towns. The uniformity of the employment in running from place to place, cannot constitute it a pleasure carriage, nor deprive it of that character, if, without such use, it is entitled to that appellation. Without impropriety, therefore, it may be said, that stage coaches are pleasure carriages, used by the public. The coach of the private gentleman, and the coach of the stage proprietor, are alike built to accommodate persons only; and to that purpose are appropriated. They differ only in the particulars which have been mentioned. While the former is designed to transport the owner, or those whom he invites, the latter is offered to the public, and intended to convey all who desire such a conveyance, and can be accommodated by it. We cannot see any essential difference between them, in relation to their liability to pay toll. If the private coach is made liable, because it is constructed and used for the purpose of transporting persons, there would seem to be no good reason for exempting a public coach, which is built and used for the same purpose. No enquiry can, or ought to be made, in either case, whether on the occasion when it is used, business, or pleasure has led to its use; or whether the traveller has luggage, or is without any; or whether he receives pleasure, or suffers pain from the journey. The carriage in which he rides, is still one designed to convey his person, and is appropriated to that object, is built for his more comfortable conveyance, and used with reference to that design.

If the views we have thus expressed required any support,

*Hartford,*
June, 1836.

Talcott Mountain Turnpike Company
*v.*
Marshall.

*Hartford,*
*June, 1836.*

Talcott Moun-
tain Turnpike
Company
*v.*
Marshall.

they are fully confirmed, by the other provisions of this charter relating to tolls. It is apparent the legislature intended to divide all vehicles which passed on this road, into two classes, designated by a specific appellation, or by the uses for which they were built and to which they were applied : one for the carriage of *persons,* denominated a pleasure carriage, or called by its specific, appropriate name, as a chaise, wagon, &c.; the other, for the carriage of *burdens,* and distinguished as loaded or empty. All the vehicles mentioned in this charter, are included in one or the other of these classes. The first embraces " four wheeled travelling pleasure carriages," " chaises," " chairs" and " sulkeys," " pleasure sleighs" and pleasure wagons. These are constructed, and generally used, to convey persons only. But when the charter speaks of vehicles built and used for the transportation of merchandise or burdens, it calls them " loaded wagons, or empty"—" loaded carts, or empty"— " horse carts, loaded, or empty"—" loaded sleigh or sled, or empty." These expressions clearly shew the classification intended, by the legislature, of the different vehicles which might pass on the plaintiffs' road. All four wheeled carriages, built and used to transport persons, where no specific name is given to them, are denominated " pleasure carriages." All two wheeled carriages, constructed and used in like manner, are included in the terms, " chaise," " chair" and " sulkey." All such vehicles as are built and designed for the transportation of burdens, are put into another class, and different rates of toll established, according as they are loaded, or empty, and denominated " loaded wagon or cart, or empty"—" horse cart, loaded, or empty"—" loaded sleigh or sled, or empty." It would be quite singular to speak of a loaded pleasure carriage, or a loaded chaise, chair or sulkey ; but the common and ordinary use of language authorizes the expression, a loaded wagon, cart or sleigh ; and the feeblest mind knows its meaning. We cannot doubt that the design of the legislature in establishing these tolls, was, to obviate the necessity of a *specific* enumeration and description of every vehicle by *name,* and to prescribe a rule by which all descriptions, whether then in use, or thereafter to come into use, might be embraced, so that all might fall under the denomination, either of vehicles for the conveyance of persons, or those for the transportation of burdens. When the rate of toll is fixed for " sleighs," this distinction is very obviously

*Hartford,*
*June, 1836*

Talcott Moun-
tain Turnpike
Company
*v.*
Marshall.

pursued. Every "*pleasure* sleigh" is first named;—then every "*loaded* sleigh;"—and then, every "*empty*" sleigh. The former is put in contrast with the two latter. The pleasure sleigh is so called, because it is used to transport persons; otherwise, it has no meaning. The loaded sleigh is so named, because it carries burdens. The empty sleigh is so denominated, because, though designed for the transportation of goods or articles of burden, it is also used when it is empty. We think, therefore, a stage coach of the description mentioned in the case reserved for our advice, was intended to be, and is, fairly embraced by the words, as well as the spirit, of the charter granted to the plaintiffs.

There are, however, other considerations, which have an important bearing upon the question submitted to us; and which, in our opinion, ought not to be overlooked.

We have been furnished with a transcript of the acts incorporating turnpike companies, from 1792 to 1806, inclusive. The whole number is 40. Of these, there are 17, which do not include stage coaches, unless under the name of pleasure carriages. These are, *Oxford*, incorporated in 1795;—*Norwalk & Danbury*, 1795;—*Fairfield, Weston & Redding, Boston, Stratfield & Weston*, 1797;—*Talcott Mountain, Greenwoods*, 1798;—*Windham*, 1799;—*Granby*, 1800;—*Danbury & Ridgefield, Hartford & Tolland, Farmington & Bristol*, 1801;—*New-Preston*, 1802;—*Washington, Thompson, Woodstock & Thompson*, 1803;—*Warren*, 1806. In 3 of them, the expression is, "pleasure carriage, except a stage carrying the mail." These are, *Norwich & Providence*, 1794; *New-Milford & Litchfield*, 1797;—*Litchfield & Harwinton*, 1798. In 14 of them, stages other than those carrying a mail, are named, and are put at the same rate of toll, as four wheeled pleasure carriages, and not into the class of vehicles which transport merchandise. These are, *Streights, Saugatuck*, 1797;—*Ousatonuc, Derby, Hartford & New-Haven*, 1798; *Canaan & Litchfield*, 1799;—*Farmington River, Hartford & New-London*, 1800;—*Rimmon Falls, New-Haven & Milford, Greenwich & Ridgefield, Middlesex*, 1802;—*Goshen & Sharon, Middle Road*, 1803. In 11 of them, stages are inserted by name, and put at a lower rate of toll. These are, *Greenwich*, 1792;—*New-London & Windham, New-London, Windham & Tolland*, 1795;—*Streights,*

Hartford,
June, 1836.

Talcott Moun-
tain Turnpike
Company
v.
Marshall.

1797 ;—*Ousatonuc, Derby*, 1798 ;— *Windham & Mansfield*, 1800 ;—*Torrington, Norwich & Woodstock*, 1801 ;—*Pomfret & Killingly*, 1802 ;—*Stafford Pool*, 1803. In one of them, *Colchester & Norwich*, 1805, the expression is " pleasure carriage *or* stage." We cannot reasonably presume, that the legislature intended *wholly* to exonerate from the payment of toll, stage coaches travelling on these seventeen distinct turnpike roads, when we consider, that the then proprietors are as much benefitted by the use of the road, as the owners of other four wheeled carriages ; that the companies are under the same obligation to keep the road in proper and suitable repair, for the accommodation of both ; that the stage, from its construction, weight and number of passengers, will occasion, at least equal necessity for repairs on the road, as the use of it by private carriages ;—that in three of the acts of incorporation, the " stage" is mentioned, by way of *exception* to other pleasure carriages with which it is classed, thus implying that without such exception, it would be embraced by the general term, pleasure carriage ;—that in fourteen of these acts, although specifically named, stages are subject to the same toll as other four wheeled pleasure carriages, thus evincing, in the most decided manner, the justice and reasonableness, in the view of the legislature, of subjecting both to the payment of the same toll, and also showing the uniformity of their classification with pleasure carriages, and not with vehicles carrying burdens, which pay a less toll ;—that in eleven of these acts, stages pay a lower rate of toll, thus subjecting them to a small burden, in consideration of the benefit they receive, and yet relieving them from a portion of it, principally as an encouragement to the transportation of the mail ;—that in one of them, the vehicle is called a pleasure carriage *or* stage, thus implying, that the names are used as synonymous. In view of these facts, we should depart from our appropriate duty, which is to expound and declare the law, and should assume the authority to make it, were we to yield to the claim made in this case, that the stage coaches of the defendants may pass the plaintiffs' road free from the payment of toll. We should pause, and with reluctance, countenance such a claim, were there nothing else in the case to justify us in the result to which we have arrived, but the obvious injustice and clear want of equity, which this defence exhibits. But our opinion is sustained, not only by a

fair interpretation of the words, and by the whole spirit of the charter granted to the plaintiffs, but is in accordance with the meaning which the legislature has given to the word *pleasure carriage*, in numerous acts of incorporation, granted at the same time, and at prior and subsequent sessions.   This charter was granted in 1798.   At the same session of the General Assembly, five similar acts of incorporation were passed, *viz. Ousatonuc*, in which the words are, " travelling four wheeled pleasure carriages, 25 cents," " mail stage, 6 cents, 2 mills," " every other stage, 25 cents ;" *Derby*, in which the same language is adopted ; *Hartford & New-Haven*, " each four wheeled pleasure carriage and horses, 25 cents ;" "stage, including driver and passengers, 25 cents ;" *Litchfield & Harwinton*, " travelling four wheeled pleasure carriages, except a stage carrying the mail, 12 cents, 5 mills ;" *Greenwoods*, " travelling four wheeled pleasure carriage, 25 cents."   Can it be reasonably supposed, the legislature, at the same session, intended, in different acts, to impose upon a part of the corporations which they created, the burden of maintaining and keeping in repair, roads for the benefit of stages without any remuneration, and as to the remainder, to authorize the collection of toll for similar vehicles, as a compensation for the use of the road ?   To give such an interpretation to these legislative enactments, would, indeed, contravene the rule of construction pressed upon us, by the counsel for the defendants, that statutes in *pari materia*, or upon the same subject, or relating to the same point, may be construed with reference to each other, so that what is clear in one statute may be called in aid to explain what is obscure and ambiguous in another.   1 *Bla. Com.* 60.   They are considered as having one object in view, and acting upon one system, governed by one spirit and policy, and intended to be consistent and harmonious in their several parts and proportions.   1 *Kent's Com.* 433.

We are aware it has been strongly insisted, that the fact, that in some of the acts passed at the same session, stages are specially named, raises a fair presumption that as to those where they are omitted, the omission was either accidental or designed ; and that the court cannot supply words, which the legislature has not thought proper to adopt ; especially, when their insertion would be in derogation of common right.   This argument exhibits more professional ingenuity, than logical de-

HARVARD LAW SCHOOL LIBRARY

*Hartford,*
*June, 1836.*

Talcott Moun-
tain Turnpike
Company
*v.*
Marshall.

duction. Its application to the charter granted at that session, is not admitted. There was no necessity for naming stages, because, in our opinion, they were already embraced in the expression, "pleasure carriages ;" and this, we think, is apparent from the fact that when stages are named, especially in the acts passed at the same session, they are so designated, either for the purpose of imposing on such of them as carry a mail, a less toll than that to which they would otherwise have been subject, under the more general expression, *pleasure carriage,* as in the *Ousatonuc* and *Derby* acts, where mail stages are charged with only 6 cents, 2 mills toll, while pleasure carriages are required to pay 25 cents ;—or for the purpose of exonerating them entirely, as in the *Litchfield & Harwinton* act, where all four wheeled pleasure carriages, *except a stage carrying the mail,* are charged with 12 cents, 5 mills toll ;—or for the mere purpose of more clearly distinguishing between vehicles carrying passengers and those carrying burdens, as in the *Hartford & New-Haven* act, which imposes the same toll on pleasure carriages and stages. In the construction we give to the plaintiffs' charter, we do not add any words to those which we find in it. We simply declare the meaning of those which are used, according to what, we believe, was the intention of the legislature, ascertained by the application of just and well settled rules of construction. We disclaim all power to make charters, either in the form of supplying, or of erasing words ; but we perform our constitutional duties, in giving effect to the expressed will of the legislature, when we have ascertained it, by a fair interpretation of the language they have used.

It was further claimed, by the defendants, that *a stage,* according to the general and popular use of the word, is a different vehicle from *a pleasure carriage ;* and it is an admitted rule in the construction of statutes, that words are to be understood according to their natural and ordinary signification and import. This rule is, certainly, a very just and reasonable one ; and has the sanction of the highest authority. We do not perceive, however, that its binding force is denied, by the interpretation we have given to the charter of the plaintiffs. The word "stage" is used in a variety of senses, and has a diversity of meanings ; because it is properly applied to different subjects or objects. We find, therefore, in examining the dictionary of our distinguished lexicographer, that this word has several dif-

ferent meanings, according as application is made of it, to differ-
ent subjects. Thus, it is used to denote a floor or platform;
the floor on which theatrical performances are exhibited; a
place of action or performance, as the stage of life; a place of
rest on a journey; the distance between two places of rest on a
road. So we speak of the several stages of war, of civilization
or improvement; stage of growth, in an animal or plant; sta-
ges of disease, decline or recovery; the several stages of hu-
man life; and with reference to the subject before us, the word
stage, which is used instead of stage coach or stage wagon, is
defined to be, "a coach or other carriage, running regularly
from one place to another, for the conveyance of passengers."

*Hartford,
June, 1836.*

Talcott Moun-
tain Turnpike
Company
*v.*
Marshall.

"I went in the sixpenny stage." *Swift.*

"A parcel sent by the stage." *Cowper.*

*American usage.*

When so used, the common sense of mankind gives to it
the same unquestionable signification. It is a carriage devo-
ted to public use, and built and used for the transportation of
passengers; and the pleasure carriage of the private individu-
al, except as to its use by the public, is neither more nor less
than this. Besides, it is not to be forgotten, that when the
plaintiffs' charter was granted, stages were not in common use.
Since that period, their number and general usefulness have
greatly increased. If we look at the state of things in this re-
spect, existing in 1798, it will cease to be matter of surprise, that
stages were not specially mentioned in *all* the charters for
turnpike roads. The word *stage*, in reference to this charter,
is a description of the *use*, not of the form, of the vehicle. If
an individual should purchase a stage coach, and use it for the
conveyance of himself and family, would it be exempted from
the payment of toll, because it bore the specific name of *stage?*
Would it not be, while so employed by him, as it was while
owned by the stage proprietor, *a pleasure carriage*, designed
for the use, comfort and convenience of persons or passengers
who travelled in it?

We deem it unnecessary to add to the views we have already
suggested, upon the question submitted to us. We entertain
no doubt that a just and fair interpretation of the act of incor-
poration, by virtue of which the plaintiffs seek to recover the
tolls unpaid, demands of us, to sustain and enforce his claim;
and that the objections to it are not well founded.

*Hartford,*
June, 1836.

Talcott Moun-
tain Turnpike
Company
*v.*
Marshall.

We add, that the case of *Moss* v. *Moore*, 18 *Johns. Rep.* 128.; in the supreme court of *New-York*, and that of *The Middlesex Turnpike Company* v. *Wentworth*, 9 *Conn. Rep.* 373. in this court, bear a strong analogy to the case before the court, and are in accordance with our present decision.

It is manifest, upon the grounds maintained in this opinion, that the right of the plaintiffs to recover full toll, is the same, whether the coach of the defendants was employed in transporting the mail, or travelled without it. The charter makes no distinction between the cases. Both are included in the general term, *pleasure carriage*, and are charged with one uniform toll. The result, therefore, is, that the plaintiffs are entitled to judgment for the amount of tolls, to be ascertained, by reference to the number of times the defendants' stage passed through the plaintiffs' gate, as specified in the case stated by the parties ; and the superior court is to be so advised.

The other Judges were of the same opinion.

Judgment for the plaintiffs.