LESSING, SOLOMON & ROSENTHAL v. Y. C. GRIMLAND & CO.

No. 6305.

**Bill of Sale—Mortgage.**—Whatever may be the form of instruments which transfer and retransfer property, if it is manifest that the result contemplated was the security of a debt and not its discharge, effect will be given to the object contemplated. See opinion for facts.

APPEAL from McLennan.    Tried below before Hon. Eugene Williams. The opinion states the case.

*S. L. Samuels,* for appellants. — 1.    None of the papers recite an indebtedness of defendants to plaintiffs, or state that such indebtedness is paid or canceled.    Rockwall v. Humphreys, 57 Wis., 410.

2.    No receipt, release, or discharge was ever given.    The notes were

not returned or demanded, although one of them was not yet due. A statement of the indebtedness was presented to defendants shortly after the execution of the papers of November 26, 1883, and not receipted. Calhoun v. Lumpkin, 60 Texas, 188, 189; Stephen v. Cushman, 35 Ill., 196, 197; Ennor v. Thompson, 46 Ill., 223; Babcock v. Wyman, 19 How., 296, 298; Bridges v. Linder, 14 N. W. Rep., 217.

3. The sale and contract to resell within six months was obviously intended as a security and means of paying the indebtedness of $8897.08 with ten per cent interest from November 26, 1883, because in any event plaintiffs were to get that amount and no more. Any surplus above that amount was to go to defendants. Nat. Bank of Texas v. Lovenberg, 63 Texas, 506; Stephens v. Allen, 11 Ore., 188.

4. The stipulation in the contract was that defendants were to pay interest from November 26, 1883, at ten per cent. Loving v. Milliken, 59 Texas, 426; Hickok v. Lowe, 10 Cal., 197; Hogan v. Jacques, 4 C. E. Green, 128, 129; Sweet v. Parker, 9 C. E. Green, 457.

5. The price at which defendants might purchase was fixed, to-wit, the debt and interest. Plaintiffs were obliged to carry on the business and with the net proceeds reduce said price for the benefit of defendants.

6. Delivery of possession of the goods and accounts was not unconditional, but for the special purpose of reducing or paying the indebtedness, as shown by the stipulation that defendants were to put two clerks in the store to see that the business was fairly done and correct accounts kept.

7. There was no stipulation that in case the proceeds of the business should fall short of the stipulated sum that the notes of defendants should be canceled or returned.

8. On March 7, 1884, defendants agreed in writing with plaintiffs that the business should be sold to third persons and the proceeds credited on their indebtedness to plaintiffs. Budd v. Van Orden, 33 N. J. Eq., 143.

9. Defendants at various times admitted their indebtedness, as testified by witnesses. Budd v. Van Olden, 33 N. J. Eq., 143.

10. The accounts turned over were from time to time collected, and with knowledge of defendants credited on their indebtedness to plaintiffs.

11. The goods, accounts, etc., conveyed were much in excess of the price agreed on. No inventory was taken until after papers had been executed and delivered. Huscheon v. Huscheon, 12 Pac. Rep., 411, 412.

No brief on file for appellees.

Acker, Presiding Judge —Appellees were merchants doing business at Clifton, in Bosque County, and were indebted to appellants in the sum of $8897.08. On the 26th day of November, 1883, appellees executed to appellants an instrument in the form of a bill of sale, reciting the con-

sideration to be $8897.08, and containing the following recitations: "And whereas said Lessing, Solomon & Rosenthal have signed a certain article of agreement wherein they bind themselves to resell to said Grimland & Co. all goods, wares, and merchandise, and choses in action remaining uncollected and unsold within six months from the 26th of November, 1883, upon said Grimland & Co. giving good and ample security: Now, be it agreed, that should said Grimland & Co. be unable to make satisfactory security within the aforesaid time for the repurchase of said goods and choses in action, then at the expiration of said time the said Lessing, Solomon & Rosenthal shall invoice at a cash value all such goods, wares, and merchandise as shall remain unsold; and in event the said goods, wares, and merchandise shall be of value to an amount in excess of the sum agreed upon between the said Grimland & Co. and the said Lessing, Solomon & Rosenthal for the repurchase of said goods, wares, and merchandise, and choses in action, then the said Lessing, Solomon & Rosenthal shall pay to Grimland & Co. all such excess of amount."

Of the same date and at the same time Lessing, Solomon & Rosenthal executed and delivered to appellees an instrument reciting that Grimland & Co. had sold to them the stock of merchandise, fixtures, and choses in action for the sum of $8897.08, and "now we herein agree to resell the same to said Grimland & Co., upon the following terms and conditions, at any time within six months from this date; that is to say: We have taken possession of our said stock of goods, etc., and choses in action so purchased of Grimland & Co., and opened business in the old store house at the old stand of said firm, and will carry on business therein in the usual way, keeping books so as to show the transactions and business done, and cash received and paid out, and the said Grimland & Co. may put two clerks in the store to see that the business is fairly done and correct accounts kept; and should the said firm of Grimland & Co. at any time within the said six months desire to repurchase the goods, etc., and choses in action, they shall have the right to do so upon paying to us the said sum of $8897.08, and ten per cent interest thereon from this date, and in making such payments to us they shall first be credited with all the net cash received by us over and above expenses and purchases to keep up stock and all net collections on the notes and accounts from this date to date of repurchase, and the balance of said money to make said repurchase as aforesaid shall be paid to us in cash, or secured to our satisfaction, and upon such payment being made to us we agree to reconvey to said Grimland & Co. all of the goods, etc., and choses in action then unsold and uncollected. In the matter of expenses it is understood that all of the expenses of carrying on the business is to be deducted from the cash received, including taxes, insurance, clerk hire, etc."

Under these instruments appellants took possession of the goods, etc., and choses in action without taking an inventory. An inventory taken

a few days thereafter amounted to $12,538.26. Two of the members of the firm of Grimland & Co. remained in the store as clerks and assisted appellants in carrying on the business and collecting the choses in action. About the time that appellants took possession of the assets and business at the request of appellees they paid debts due other creditors to the amount of about $1200. The business was carried on until the 7th of March, 1884, all net receipts being credited on appellees indebtedness to appellants, when the stock of goods, etc., and choses in action were disposed of by appellants in conformity with the following agreement:

" *Bosque County, State of Texas.*—The following articles of agreement entered into this day by Lessing, Solomon & Rosenthal, of Waco, McLennan County, State aforesaid, parties of the first part, and Peter Pierson and Y. Grimland, Bosque County, State aforesaid, parties of the second part, witnesseth:

" Whereas the parties of the first part being now in possession of a certain stock of goods turned over to them by Y. C. Grimland & Co., Clifton, Bosque County, Texas; and

" Whereas the parties of the second part are anxious and desirous of having the business of Y. C. Grimland & Co. liquidated so as to prevent them from further loss, and on account of the relationship existing between the parties of the second part and the members composing the firm of Y. C. Grimland & Co., and for the further consideration of one dollar each, paid to the other, it is hereby

" Agreed that the parties of the second part have this day bought from the parties of the first part the entire stock of goods, wares, and merchandise known as the Y. C. Grimland & Co. stock on the following conditions:

" Goods to be invoiced at market cost, viz., cost and carriage. After said inventory is complete, including the fixtures contained in said store and belonging to Y. C. Grimland & Co., on ascertaining the aggregate amount a discount of ten per cent is to be deducted from the amount, except the goods purchased from Forbes & Boyle. And this is the basis of the sale of said stock and fixtures from the parties of the first part to the parties of the second part; and the parties of the first part hereby agree that they will transfer and turn over to the parties of the second part the said stock and fixtures as per inventory, which said inventory is to be commenced immediately, and the parties of the second part hereby agree to receive and take possession of the same and become liable to the parties of the first part. The parties of the first part agree that they will credit Y. C. Grimland & Co.'s account with the amount that the stock and fixtures will amount to as cash the day said stock is turned over; and the parties of the second part agree to become liable to the parties of the first part for a like amount as cash. The same shall bear interest at the rate of ten per cent per annum from that date until the entire

amount is paid to the parties of the first part, which the parties of the second part agree to do, and bind themselves to pay same at Waco, Texas, as follows:

"The parties of the second part shall execute their joint notes, dated the date of transfer of goods, and due respectively 15th April, 15th May, 15th June, 15th July, 15th August, and 15th September, 1884, for four hundred dollars each, one note for two thousand dollars to become due 1st January, 1885, and the balance to be paid in three equal payments respectively 15th October, 15th November, and 15th December (1884), eighteen hundred and eighty-four.

"Witness our hands and seal, using scroll for seal, this 7th day of March, 1884.

"Lessing, Solomon & Rosenthal,

"P. Pierson,                     •

"Y. Grimland."

"Witness:  P. R. Hobin.

"*Addenda.*   We the undersigned have read the above agreement made between and by Lessing, Solomon & Rosenthal and P. Pierson and Y. Grimland, and we give our consent to the above entire transaction as therein stated.

"Y. C. Grimland & Co."

It appears that all of the members of the firm of Y. C. Grimland & Co. were present and approved the foregoing agreement.

This suit was brought by appellants on two notes amounting to $2184.12. Appellees answered that on November 26, 1883, they owed appellants $8897.08, including the notes sued on, and on that day paid off the entire indebtedness by a sale and delivery to appellants of their stock of goods and notes and accounts of the value of $12,538.26. By supplemental petition appellants denied that the goods and choses in action were taken in payment of their debt, and alleged that they were received simply as security for the debt, and disposed of in accordance with the agreement and understanding with appellees, and the proceeds applied as a credit on appellees' indebtedness to them, leaving the notes sued on unpaid. There was verdict and judgment for appellees.

It is contended by appellants that the two instruments of November 26, 1883, constitute a mortgage or security for the debt due by appellees to them, and were not made in satisfaction of the debt, and that the verdict is therefore contrary to the law and the evidence.

It is not claimed that appellants did not credit appellees with the net proceeds of the sales of the stock of goods and the money collected on the notes and accounts. The question of controlling importance, and the only one which we think it necessary to consider, is whether or not the stock of goods and choses in action were turned over to appellants as security for the debt due to them by appellees, or whether the property

was turned over to them and received by them in payment and full satisfaction of the debt. This question must be determined from the intent of the parties at the time of the transaction, and that intent must be arrived at from the language employed in the two instruments of writing executed by the parties respectively at the time the goods and choses in action were turned over to the possession and control of appellants. The two instruments executed contemporaneously must be considered together and construed one with reference to the other. The parties having undertaken to express their intent in writing, we must look to the written instruments to discover their purpose and intent in entering into the contract and agreement, and unless the instruments themselves are ambiguous the intent of the parties must be determined from the language of the instruments alone. Walker v. McDonald, 49 Texas, 462.

If the language of the instruments of writing is ambiguous then parol evidence may be heard to determine the intent of the parties, but in the absence of ambiguity it devolves upon the court to construe the instruments and declare the intent of the parties from the language which they have employed to express their meaning. If the stock of goods and choses in action were delivered to appellants as security merely for the debt and not in payment of it, then it is clear that the verdict is contrary to the law and the evidence.

We think the instruments of writing are not ambiguous and admit of but one construction, and that is that appellants received the goods and choses in action as security for and not in payment of the debt due to them from appellees. It was expressly stipulated that appellees should be charged with interest on their debt at ten per cent per annum from the date of the instruments, and it was further expressly stipulated that in the event appellees were unable to repurchase at the expiration of the six months appellants were to credit them with net cash receipts, the goods undisposed of were to be inventoried at their cash value, and appellants were to pay to appellees the excess in value over the balance due from appellees. It is not stated in either instrument that the debt due to appellants was discharged and satisfied by the transaction, but as we have said the language employed evinces conclusively to our mind that such was not the intent of the parties. Bank v. Lovenberg, 63 Texas, 506. But if the intent of the parties was not clear from the instruments alone, we think the parol evidence adduced upon the trial conclusively shows that the transaction was regarded by both parties at the time it was made as a security.

If the transaction was an absolute sale in payment of the debt due to appellants, we are unable to discover any reason why appellees should have been at all concerned about the subsequent disposition of the goods and choses in action, or why they should have endorsed their approval on the agreement for the sale of the goods and choses in action entered into between appellants and P. Pierson and Y. Grimland on the 7th of March,

1884, more than three months after the goods and choses in action had gone into the possession of appellants under the terms and conditions stated in the written instruments of November 26, 1883. The agreement for sale entered into between appellants and Pierson and Y. Grimland recites: "The parties of the first part (appellants) agree that they will credit Y. C. Grimland & Co.'s account with the amount that the stock and fixtures will amount to as cash the day said stock is turned over." Following this agreement is a written statement signed by appellees containing the following language: "We the undersigned have read the above agreement * * * and we give our consent to the above entire transaction as therein stated." Appellees testified that they consented to the sale to Y. Grimland and Pierson because they were convinced that they would not be able to settle with appellants and repurchase the goods and choses in action.

We think it too clear to require further discussion that upon a proper construction of the two instruments, as well as upon the other evidence adduced upon the trial, the transaction was nothing more than a security for and not a payment of the debt.

We are of opinion that the judgment of the court below should be reversed and the cause remanded.

                                        *Reversed and remanded.*

Adopted June 4, 1889.