*Reversed and remanded.*

---

## ED PARKS ET AL. V. W. H. KNOX ET AL.

### Decided May 5, June 9, 1910.

**1.—Independent Executors—Distribution—Surrender of Control.**

When executors empowered to act independently of the Probate · Court make a distribution of any portion of the estate and deliver possession to the heirs or devisees, they lose all control or dominion over that portion and can not thereafter administer it for the benefit of creditors.

**2.—Same—Judgment—Case Stated.**

The widow of a decedent and another being joint executors of his estate, independent of the control of the Probate Court, they and her children, his heirs, were sued by his children by a former wife seeking to recover their interest as heirs of decedent. By consent of all parties a distribution of the estate between the heirs was agreed to and judgment entered setting aside to each specific property as his share and releasing the interest of the estate and of the other heirs therein, certain of the property being so allotted to the widow and her children jointly as their share of the estate. A year later the executors conveyed a tract of this land, set apart to the widow and her children, to others, in consideration of a credit on a debt of the decedent

which had been reduced to judgment. Held that the agreement and judgment effected a final distribution of the estate, and that thereby the executors had lost the power to administer it for creditors, and their deed did not convey the title of the heirs to whom the tract had been set aside by the consent decree.

**3.—Same.**

The distribution of the estate by consent decree, if final as to some of the parties, must be final as to all. The executors could not be divested of control without their consent; but, consenting to the distribution, they could not resume control of a part of the property for the purpose of paying debts without injustice to the party to whom it was awarded, though the latter would take the same subject to the rights of creditors of the estate to call on him for contribution.

**4.—Executors—Relinquishment of Control—Intent.**

The intent of the executors to relinquish control of the estate by consenting to its distribution must be determined from the legal effect of their acts at the time. Their attempt, a year later, to resume control by mortgaging or conveying the land, could not alter the effect, and their intent must yield to the legal result of what they did.

**5.—Judgment—Pleading—Consent.**

A judgment by consent cures all errors except those resulting from a lack of jurisdiction in the court, and those also, so far as jurisdiction can be conferred by consent. Such judgment is not rendered void by the fact that the relief afforded goes beyond what was sought by the pleadings.

**6.—Executors—Consent to Distribution.**

The independent executors having a right to consent to distribution of the estate, such distribution by a decree entered in pursuance of an agreement by them and the heirs, was effective without reference to the validity of the decree as a judgment.

**7.—Executor—Deed—Interest as Heir.**

A conveyance by an executor who is also a joint owner of the property will be sufficient to pass his individual interest, though ineffective in his representative capacity.

**8.—Judgment—Joint Intent.**

A judgment by consent distributing lands of an estate to the widow and her two children jointly in fee simple gave each an equal undivided one-third interest therein, irrespective of their rights under the will, which was eliminated from consideration by the consent decree.

ON MOTION FOR REHEARING.

**9.—Heirs—Recovery of Land—Debts Discharged.**

Where heirs recover land of their ancestor, conveyed without authority by his executors, they should be required to refund so much of the consideration paid as went to discharge debts of the estate subject to which they inherited.

Appeal from the District Court of Cherokee County. Tried below before Hon. James I. Perkins.

*Norman & Shook,* for appellants.—Defendants holding and claiming under deed made by the executors of W. S. Parks, the parties to said judgment, are concluded thereby. Said judgment divested the title of said estate and of the executors, and invested it in the plaintiffs and

is final and conclusive, and the court erred in not so holding and not giving judgment for plaintiffs. McDonough v. Cross, 40 Texas, 271; Allen v. Von Rosenberg, 16 S. W., 1099; Gillespie v. Crawford, 42 S. W., 624; Henderson v. Findley, 75 Texas, 185; Bledsoe v. Beiler, 66 Texas, 437; Livingston v. Keonig, 20 Texas Civ. App., 398; Henderson v. Moss, 82 Texas, 71.

Both the executors and all the heirs entitled to receive any portion of said estate were present in court and were represented in said proceedings, and were and are concluded by the said judgment from denying or otherwise questioning the effect of said judgment, and therefore there was no title in the independent executors or in W. S. Parks' estate to be conveyed by their deed to Ezell and Beard. McDonough v. Cross, 40 Texas, 271; Reynolds v. McFaddin, 36 Texas, 129; Taylor v. Williams, 108 S. W., 817; Stephens v. McFaddin, 42 Texas, 1329; Groesbeck v. Groesbeck, 78 Texas, 668; Grigsby v. May, 84 Texas, 240; Todd v. Williams, 66 Texas, 129; Wise v. O'Malley, 60 Texas, 587; Houston v. Killough, 80 Texas, 307; Wood v. Mistretta, 20 Texas Civ. App., 237; Moore v. Moore, 25 S. W., 218; Allen v. Von Rosenberg, 16 S. W., 1099; Gillespie v. Crawford, 42 S. W., 624; Henderson v. Lindley, 75 Texas, 185; 11 Am. & Eng. Ency. Law, 2 ed., 1160, sec. 11; Livingston v. Keonig, 20 Texas Civ. App., 398; Henderson v. Moss, 82 Texas, 71.

John A. Boyd and Mary A. Parks were authorized to relinquish and surrender the executorship of said estate in whole or in part, and they had the right to surrender, to any person entitled to receive it, any portion of said estate or to divide the same without the advice or control of any court, and they were the sole and exclusive judges of the advisability in so surrendering said executorship. McDonough v. Cross, 40 Texas, 271; Allen v. Von Rosenberg, 16 S. W., 1099; Gillespie v. Crawford, 40 S. W., 264; 11 Am. & Eng. Ency. 1160, sec. 11.

*Mantooth & Collins,* for appellees.—The judgment did not change the title, the status, or possession, of the lands belonging to the devisees, nor relieve the lands from the payment of the debts, nor divert or change the control of these lands or the power of the executors over the same, for there was no issue joined between the defendants, executors, and the devisees. Penn v. Penn, 81 S. W., 349; Dunlap v. Southerlin, 63 Texas, 38; Riverside Lumb. Co. v. Lee, 27 S. W., 161; Gulf, C. & S. F. Ry. Co. v. Vieno, 26 S. W., 230; 23 Cyc., p. 695, sec. 1; p. 697, sec. 2; Mistrol v. Texas Oil Co., 3 App., C. C. (Willson) sec. 70; Pee v. Herford, 1 App., C. C. (White & W.) secs. 502, 503; Frazier v. Woodward, 61 Texas, 449.

It is a mixed question of law and fact that determines whether or not the independent executors have surrendered their possession, management and control of the property entrusted to them by the will of the testator, and this is determined by the court proceedings, together with the action of the executors and defendants thereafter. Penn v. Case, 81 S. W., 352.

The judgment referred to vests the legal title in the heirs of W. S. Parks, whereas they had the same title before the suit and is valid

for that purpose, based on the pleadings and agreement, and is void in attempting to divest possession out of the executors for want of pleadings, evidence or agreement. Gear v. Hart, 31 Texas, 135.

Mrs. Roxanna Parks, surviving wife of Ed. Parks, owning half of this survey at the death of her husband, and having given a mortgage on it to John McCrummen to secure debt, as executrix and individually and warranting the title individually, and McCrummen having transferred his equity in said land to John A. Beard and E. F. Ezell, owners of the Beard judgment, and she as executrix, sold the land to Beard and Ezell, the conveyance and mortgage conveyed all the right that she had to her half of the land. Caruthers v. Alexander, 12 S. W., 12-13; Banks v. Eustis, 28 S. W., 230.

The judgment did not change the management, control and disposition of the lands belonging to the community estate of W. S. Parks and his last wife, by the executors named in his will as directed by the will, they having no title in them but a trust to perform that the District Court could not deprive them of. Ray v. Whitaker, 18 S. W., 892.

In 1879, the District Court had no power to deprive the executors of W. S. Parks of their exercise of power and discretion confided to them by the testator in the disposition of the property, as directed in the will for the payment of the debts of the testator, W. S. Parks, as long as the executors were administering the estate according to the direction of the will. Franks v. Chapman, 60 Texas, 46; Cleveland v. Cleveland, 30 S. W., 827; Ballard v. Wheeler, 56 S. W., 946; Ray v. Whitaker, 48 S. W., 892.

The Probate Court, nor independent executors, under the will, are neither bound to observe a decree rendered by a District Court unless the jurisdiction of the District Court does properly attach. Franks v. Chapman, 60 Texas, 46.

HODGES, ASSOCIATE JUSTICE.—Appellants brought this suit in the ordinary form of an action of trespass to try title, seeking the recovery of 320 acres of the B. J. Smith survey, situated in Cherokee County. They are the children of W. S. and Mary A. Parks, both deceased, and claim title by inheritance from their parents. The appellees, defendants in the court below, pleaded not guilty, and specially set up their title as purchasers under a sale made by the executors of the will of W. S. Parks, the father of appellants, to J. M. Beard and E. F. Ezell. From the agreed statement we make the following findings as to the facts: W. S. Parks, the common source of title, was married twice, and the appellants are the children of his second marriage. His first wife, Minerva, died in Cherokee County in 1864, leaving surviving her W. S. Parks, her husband, and three children, Thomas M., Mary E., and James. At the time of her death Minerva Parks and W. S. Parks owned community property consisting of both land and personalty. A portion of the land was situated in the State of Missouri. W. S. Parks subsequently married a second wife, Mary A., who became the mother of appellants, Ed. and Roxanna Parks. The land involved in this suit is the community property of the second marriage, and now belongs to the appellants unless a con-

veyance executed by the executor and executrix of the estate of W. S. Parks had the effect of passing title to Beard and Ezell, under whom the appellees claim. W. S. Parks died in 1876, leaving a will in which he appointed his wife, Mary, and his business partner, John A. Boyd, executrix and executor, and directed an independent administration of his estate. Specific portions were devised to his second wife and to the children of the former marriage, but the land involved in this suit was not disposed of. It appears that there had never been any partition between Parks and his first set of children of the community property of himself and his first wife. Most, if not all, of the land they so owned was still held by Parks at the time of his death, and in disposing of his estate by his will he seems to have made no distinction between this property and that which he thereafter acquired. The will was probated in 1876. During that year the children of the first marriage, presumably having declined to take under the will, instituted a suit in the District Court of Cherokee County against Mary Parks and John A. Boyd as the executors of the will of W. S. Parks. The purpose of that suit, as disclosed by the petition, was to recover the community interest which the plaintiffs in the action claimed by inheritance from their deceased mother, Minerva Parks. At the March term of the District Court, in 1878, an agreement was made, which formed the basis of a decree of partition entered as a final determination of the suit. The appellants in this suit, though not made parties to that suit by the pleadings, appear as parties to the agreement and the decree. During the progress of the trial John A. Boyd was appointed their guardian *ad litem,* and signed the agreement as such. The agreement provided for an entire division of all the property owned or claimed by Parks, both in his own right and as belonging to the first and last communities. The terms of this judgment more fully appear hereafter.

At the time of his death W. S. Parks was indebted to John M. Beard in the sum of $747. He was also indebted jointly with his partner, Boyd, to John McCrummen in the sum of $1,000. The Beard debt was reduced to judgment in 1879. During the same year Mary A. Parks and John A. Boyd, purporting to act as the representatives of the estate of W. S. Parks, executed a deed conveying the land in controversy to John M. Beard and E. F. Ezell. The consideration recited in this conveyance was $240 to be credited on the judgment recovered by Ezell against the estate of W. S. Parks. The claim which the appellants now assert to the land is based upon the insufficiency of this conveyance to transfer any title to Beard and Ezell. They contend that by the agreed judgment, to which we have referred, the executors had made a distribution of the property belonging to the estate of W. S. Parks, had thereby surrendered their dominion as executors, were without power to then dispose of this property for the payment of debts, and for that reason that this conveyance did not vest any title in the purchasers.

Upon a trial before the court a judgment was rendered in favor of the defendants in the suit. The principal attack upon the judgment is based upon the contention that it is not supported by the evidence.

The appellants rely upon the proposition that when the representatives of the estate of the decedent, empowered to act independently of the Probate Court, make a distribution of any portion of the estate and deliver possession thereof to the heirs or devisees, such representatives lose all control or dominion over that portion and can not thereafter administer it for the benefit of creditors. The following authorities to which we are referred we think sustain the proposition of law upon which the appellants rely. McDonough v. Cross, 40 Texas, 271; Allen v. Von Rosenberg, 16 S. W., 1099; Henderson v. Lindley, 75 Texas, 185, 12 S. W., 979; Fisk v. Norvell, 9 Texas, 14, 58 Am. Dec., 128. As proof of the fact that a distribution had been made by the executors of the will of W. S. Parks, and that possession of this property had been surrendered by them to the distributees, the appellants rely upon the agreed judgment which was rendered in the suit between the children of the first marriage and the executors of the will of W. S. Parks. The question is, does this decree, by its terms, purport to make a final distribution of the estate of W. S. Parks? The agreement upon which the judgment was based is as follows: "It is agreed in the above-entitled cause by the parties thereto that a decree by consent be entered as follows, to wit: First. Thomas M. Parks shall have the lot of land now occupied by him as a homestead in the town of Rusk. Second. James Parks shall have 160 acres, the Judge Hill tract. Third. Mary E. Bothwell, formerly Mary E. Parks, shall have 100 acres of land known as the Z. Gibbs league, being the same tract mentioned in W. S. Parks' will. Fourth. The said Thomas, James and Mary E. shall have the tract of land known and described as one-fourth league of the Jordan league. Fifth. Mary A., widow of W. S. Parks, deceased, Roxanna Parks, and Edwin B. Parks, minor children of W. S. Parks, deceased, and Mary A. Parks, shall have," etc. Then follows description of several tracts of land, including that which is here in controversy, and also all of the personal property on hand. The agreement then proceeds: "The property to be set aside in this decree to the said Thomas M., James and Mary E. to be in full satisfaction of their claims upon the estate of W. S. Parks, deceased, and the estate of said W. S. and Minerva Parks, deceased, save and except the interest in the Missouri property." This agreement is signed by the attorneys for the different parties and by John A. Boyd as special guardian for Roxanna and E. B. Parks, minors. The judgment entered upon that agreement is as follows:

"It is therefore adjudged, considered and decreed by the court that the following described land be and the same is set apart and partitioned to Thomas M. Parks: (Then follows the description). And all of the right, title and interest which the estate of W. S. Parks, deceased, and upon which the other plaintiffs and defendants herein, or either of them, have in and to said before described lot of land, together with the improvements thereon, are vested in the said Thomas M. Parks, his heirs and assigns in fee simple forever.

"It is further considered, adjudged and decreed by the court that the following described tract of land be and the same is set apart in partition to the plaintiff James Parks: (Then follows description). And all the right, title and interest which the estate of W. S. Parks,

deceased, and the other plaintiffs herein and the defendants herein, or either of them, have in and to said land, together with the improvements thereon, are vested in the said James Parks, his heirs and assigns in fee simple forever.

"It is further considered, adjudged and decreed by the court that the following described tract of land be and the same is set apart in partition to the plaintiff Mary E. Bothwell: (Then follows description). And all of the title and interest which the estate of W. S. Parks, deceased, and which the other plaintiffs herein and which the defendants herein, or either of them, have in and to the said tract of 100 acres of land, together with all the improvements thereon, are vested in the said Mary E. Bothwell, her heirs and assigns in fee simple forever.

"It is further considered, adjudged and decreed by the court that the following described tract of land is set apart in partition to the plaintiffs Thomas M. Parks, James Parks, and Mary E. Bothwell, jointly, to wit: (Then follows description). And all the right, title, and interest which the defendants herein, or either of them, and which the estate of the said W. S. Parks, deceased, has in and to the said 907 acres of land, more or less, is vested in the aforesaid plaintiffs jointly, their heirs and assigns in fee simple forever.

"It is further considered, adjudged and decreed by the court that the following land be and the same is hereby set apart in partition to the defendants Mary A. Parks, Roxana Parks and Edwin Parks jointly, to wit: (Then follows description, including the 320 acres of land involved in this suit). And the right and title of the plaintiffs herein and of the estate of W. S. Parks, deceased, or either of them, in and to the aforesaid land, or any of them, together with all improvements upon said land, are vested in the said defendants Mary A. Parks, Roxana Parks and Edwin Parks, jointly, their heirs and assigns in fee simple forever.

"It is further considered, adjudged and decreed that all and same are the personal property belonging to the estate of W. S. Parks and the estate of Minerva Parks, deceased, the first wife of W. S. Parks, deceased, be and the same is set apart in partition to and vested in the defendants Mary A. Parks, Roxana Parks and Edwin Parks, jointly.

"It is further considered, adjudged and decreed by the court that the property set apart in partition to the plaintiffs Thomas M. Parks, James Parks and Mary E. Bothwell respectively is in full satisfaction of all and singular their interest, shares and claim in the estate of Minerva A. Parks, deceased, and William S. Parks, deceased, save and except any property which may be owned by either in said estate situated in the State of Missouri."

The statement of facts contains the following agreement by the attorneys in this appeal: "It is agreed that the plaintiffs or defendants in this suit own such interest in the land in controversy as the true construction of the following instruments taken together would convey or give." The instruments referred to are the following: The written pleadings in the suit by the children of the first marriage; the agreement and the judgment dividing the property, which were entered in that suit; a mortgage executed by Mrs. Parks and John

A. Boyd as the executors of the will of W. S. Parks, dated May 12, 1879, creating a lien upon the land in controversy together with other tracts, in favor of John McCrummen, to secure an indebtedness due from the estate of W. S. Parks amounting to $1,000.00; and the deed executed by Mrs. Parks and John A. Boyd in their capacity as executors, purporting to convey the land in controversy to Beard and Ezell. In determining the rights of the parties we are thus restricted to the instruments above referred to. It seems to us that a fair construction of the language of this agreement and the judgment is sufficiently comprehensive to justify the conclusion that a final distribution of all of the property belonging to the estate of W. S. Parks and subject to administration in this State, as well as the interest inherited by the children of Minerva Parks from their mother, was made. It is true that the original petition filed by the children of the first marriage, in their suit, only sought to recover and segregate the community interest of their mother, and no more; but the judgment was not so limited. Some of the property awarded to those children consisted of lands in which their mother had no interest, community or otherwise, and which belonged to the separate estate of W. S. Parks. This fact, when taken in connection with the terms of the agreement and the judgment, justifies no conclusion other than that a final distribution of all the property in this State in which W. S. Parks owned any interest at his death was intended and was in fact effected. Let us suppose that after the entry of this agreed judgment the children of the first marriage had made a claim to some portion of their father's estate which had been allotted to the appellants and their mother, upon the ground that they had not received all to which the law entitled them. Would it be contended that they were not concluded by the partition already made? The obviously correct answer to this question would be warranted only upon the assumption that the partition made was final and binding. If the partition was final as to some of the parties it must have been final as to all, except as between those to whom there had been a joint allotment.

The question then arises, did the decree devest the executors of any further control for purposes of administration over the property thus distributed? We think so. The executors were parties both to the agreement and to the judgment, and must be held bound by what was there done in so far as they could be bound by such proceedings. If they might thereafter exercise any further administrative authority over any portion of the property, it was because the legal effect of what was there done did not amount to a distribution. We may concede that under the conditions existing at that time, those executors could not have been compelled to yield their control over all of the property of W. S. Parks and submit to a distribution, and that a judgment to that effect rendered over their objection should not be construed as depriving them of their right to continue in the exercise of their administrative functions over any portion of the property. But in the judgment here under consideration the executors consented to the rendition of the decree, and it should, for that reason, be entitled to all of the weight which a voluntary concession would add. If the estate of W. S. Parks was divided into parts and those parts allotted

to the joint owners in severalty, or to a part of them severally, and to a group of them jointly, as the interests which those owners should ultimately be entitled to receive from that estate, this amounted to a distribution, whether the executors secretly intended to relinquish their control over the property so distributed or not. A resort by them thereafter for the payment of debts to any of the portions thus allotted would not only be inconsistent with what they had deliberately done, but would be an unjust discrimination against the owner whose property might be thus taken, and destroy the basis recognized in the distribution as determining the relative rights of the parties. Having been authorized by the will to administer the estate independently of the Probate Court, the executors could determine for themselves when they would surrender their rights and powers over the estate to the distributees. In the case of McDonough v. Cross, supra, the court said: "But if it is conceded the executor under the will in this case was not authorized to sell the land, we do not think it follows that the sale here in question was not valid and binding. It is certainly within the authority conferred upon the executor, if no specific directions are contained in the will, whether the will is being administered under the supervision of the court or not, to determine when the devisees may take and hold the property devised, free from any claim of the executor thereto, for the purposes of administration. And if the executor, as the representative of the estate, acquiesces in the right of the devisees to the possession and enjoyment of the property devised, and the possession of it is delivered to them, it can not be subsequently insisted that the devised property is still part of the estate of the testator in the hands of the executor. Unquestionably the devisees take the property subject to the right of the creditors to call upon them to contribute to the payment of the debts of the testator, if the executor fails to discharge them, or the property in their hands may, by a proper proceeding, be charged with their payment. And it may be if the executor, in fraud of the right of creditors, had passed the estate committed to his charge out of his control, he may have made himself personally liable to the creditors. But still it must be admitted an ordinary judgment against him in his representative character will not authorize the levy of an execution upon the property of the estate after he has ceased to be executor, although in the proper discharge of his duties he should have retained it in his hands for the payment of the debts of the estate." Had the administration upon the estate of W. S. Parks been conducted under the supervision of the Probate Court and a distribution of the property been made in the manner disclosed by the agreement and judgment here under consideration, we do not think the finality of that distribution and its legal effect in removing the property from the control of the executors for further administration would be called in question. Henderson v. Lindley, 75 Texas, 185, 12 S. W., 979. Where the executors are empowered to act independently of the Probate Court, they may close the administration, or surrender all or any portion of the property to the heirs or devisees, without the formality of judicial sanction. When by any course of conduct legally sufficient this is done, we are unable to see why the same legal consequences should not follow as are attached

to a judicial distribution made under the direction of the Probate Court.

It is urgently insisted by the appellees that no such distribution and surrender was intended in this instance by the executors, and as evidencing the absence of any such intention, reference is made to the subsequent acts of the executors in exercising their dominion over some portions of the estate which had theretofore been divided. The transactions referred to consisted of mortgaging the land in controversy, and other lands, to John McCrummen to secure a debt due from the estate of W. S. Parks, and making the conveyance under which the appellees in this suit claim. In cases of this kind we must seek the intent of the parties by searching the evidences with which they have clothed their action. Where that evidence consists of written memoranda, or records, couched in plain and unambiguous language there can be no occasion for resorting to extraneous facts to find out what was intended. Under such circumstances it will be presumed that they had in contemplation the legal effect of what was done. Lessing v. Grimland, 74 Texas, 239, 11 S. W., 1095; 9 Ency. of Ev., 371, and cases cited. The transactions to which we have been referred as controlling the intent of the parties occurred more than a year after the entry of the judgment which we are called upon to construe. They are, therefore, too remote to be considered as a part of the *res gestae.* We are not to be governed by what the parties may have intended to do, but what they in legal effect did. When the law attaches certain consequences to the doing of particular acts, the actual intent of the actor must yield to the dictum of the law. The mortgage and deed made by the executors subsequent to the partition might indicate that they still claimed the right to sell off portions of the property for the payment of debts, but they certainly could not be considered as negativing the fact that a partition had in reality been made. If the executors entertained such an intention they merely assumed the exercise of a right which the law denied them.

It is also contended that the judgment rendered in the suit by the children of the first marriage was void as being without pleadings to support the relief there granted. It is true that the original petition filed in the case only sought the recovery and segregation of that interest which those plaintiffs inherited from their deceased mother, Minerva Parks. It is also true that the judgment rendered went further and made a partition of all of the property in which W. S. Parks was interested. But the judgment was one rendered in pursuance of an agreement made at a time when all of the parties were before the court. Whatever may be said concerning the jurisdiction of the court to pronounce the particular decree there rendered, in the absence of an agreement that it might be done, we do not think that objection can be urged in the present case. A judgment by consent cures all errors except those resulting from a lack of jurisdiction in the court. Hutchison v. Owen, 20 Texas, 287; Laird v. Thomas, 22 Texas, 280; Sandoval v. Rosser, 86 Texas, 687, 26 S. W., 935; Garner v. Burleson, 26 Texas, 348; Weaver v. Vandervanter, 84 Texas, 691, 19 S. W., 889; Lessing v. Hardie, 55 Texas, 233. The exception in the rule above stated must be still further limited in this instance to those

elements of jurisdiction which the parties could not confer by an agreement entered of record. In the last case above cited the court said: "But independently of this, it has been decided by this court that although the pleadings do not set forth a cause of action which would, on a contest, have authorized the judgment rendered, yet that this, even as to a married woman, would be waived by reason of the judgment having been by consent." However, in holding that a distribution of the estate had been made by the executors, we do not regard it as essential in this case that the partition should have resulted from a valid decree of the District Court. The executors had the legal right, independently of any judicial decree, to relinquish their administrative authority over any portion of the estate; and whether the decree be one which they, or the other heirs, can be compelled to observe, or not, it is the embodiment of an agreement equally as binding as would be a judgment to the same effect, in passing their possessory rights as executors. While the decree is perhaps more comprehensive than the agreement itself, it is nevertheless a judicial construction of that agreement, and must here be regarded as having received the full assent of the executors as entered.

But assuming that the conveyance of Boyd and Mrs. Parks, in which they undertook to transfer the land in controversy to Beard and Ezell, was void in so far as it operated upon any title held by them as executors of the estate of W. S. Parks, it does not follow that it was ineffectual for any purpose. Mrs. Parks was not only an executrix, but a joint owner of the land described in her deed; and while she might not be able to transfer any title, acting in her fiduciary capacity, because she had none, her deed would nevertheless invest her grantees with such interest as she owned in her individual right. Corzine v. Williams, 85 Texas, 499, 22 S. W., 399; 16 Cyc., 712. It therefore becomes necessary to ascertain what interest Mrs. Parks individually held in this particular property. The parties, by their agreement, have eliminated the will of W. S. Parks as a factor to be considered in determining that question, and we must look alone to the instruments to which we have heretofore referred. The judgment in the partition suit uses the following significant language: "And the right and title to the plaintiffs herein (referring to the children of the former marriage) and estate of W. S. Parks, deceased, or either of them, in and to the aforesaid lands or any of them, together with all improvements upon said land, are vested in the said defendants Mary A. Parks, Roxana Parks and Edwin Parks jointly, their heirs and assigns in fee simple forever." The legal effect of that language would be to create an equality of interest in Mrs. Parks and her children. 28 Cyc., 490; 17 A. & E. Ency. Law, 2d ed., 651. We must therefore conclude that the interest of Mrs. Parks and the children were equal, and that she held as a tenant in common with them an undivided one-third interest in the 320 acres of land involved in this suit, and that such interest passed by the terms of her deed to Beard and Ezell. The judgment of the District Court will therefore be reversed and here rendered in favor of the appellants for an undivided two-thirds interest in the land, but the case will be remanded for the purpose of enabling the parties, if they so desire, to have a partition. The judgment is accord-

ingly reversed and the cause remanded with instruction to partition the property in accordance with the views here expressed. The costs of this appeal will be adjudged against the appellees.

*Reversed and remanded with instructions.*

### ON MOTION FOR REHEARING.

The appellees in their motion for rehearing insist that the appellants are not entitled to recover the land because the consideration for which it was sold to those under whom appellees claim was applied on a judgment against the estate of W. S. Parks, and inured to the benefit of the appellants. They also call our attention to their plea in which they ask that in the event appellants recover all, or any part, of the land, they be required to refund the amount paid upon that judgment together with interest thereon from that date. This feature of the case was not called to our attention in the former presentation, and we were not apprised of the fact that appellees relied upon pleadings of that character until mention was made of it in this motion.

Assuming that the conveyance and sale were void because of the lack of authority in the executors, and that no title was imparted to the purchasers, still the executors were empowered to settle the debts of the estate, and a release of a debt to them would operate as a valid extinguishment. The evidence shows that on the 3d day of September, 1879, a judgment was recovered by J. M. Beard against the estate of W. S. Parks; that when this sale was made by Mrs. Parks and Boyd, as executors, the consideration, $240.00, was entered as a credit upon that judgment. To this extent the appellees and their mother were benefitted by the application of that consideration. Thirty years or more have passed since that transaction. The original claim based upon the judgment has long since become barred by limitation, and it would be inequitable to now permit the appellants to recover the land without making restitution of the consideration which was applied upon a debt for which their property was liable and which inured to their benefit. Halsey v. Jones, 86 Texas, 488, 25 S. W., 696; Hayes v. Gallagher, 21 Texas Civ. App., 88, 51 S. W., 280.

Under the rule announced in the cases above referred to, the judgment heretofore rendered by us should be modified. We have held that the appellants were entitled to recover two-thirds of the land sued for. It would be just for them to account for two-thirds of the consideration, $160.00, with interest thereon at the rate of eight percent per annum from September 3, 1879, as the condition upon which they will be permitted to regain possession of the land. The motion for rehearing will therefore be granted, and the judgment heretofore entered reversing and rendering the case will be so modified.

The case will be reversed and rendered in accordance with the original opinion, on condition that the appellants, within six months from this date, pay into this court, for the use and benefit of the appellees, the sum of $160.00 with interest thereon at the rate of eight percent per annum from September 3, 1879. Should they fail to comply with this requirement within that time, the judgment of the trial court will stand affirmed.

It is further ordered that all costs of this appeal be adjudged against the appellants.