## CAIN v. BOWLBY.

### No. 2057.

Circuit Court of Appeals, Tenth Circuit.

Sept. 3, 1940.

Writ of Certiorari Denied Dec. 9, 1940.

See 61 S.Ct. 319, 85 L.Ed. ——.

520

Robert L. Holliday, of El Paso, Tex. (Donovan N. Hoover, of Santa Fe, N. M., and Harold L. Sims, of El Paso, Tex., on the brief), for appellant.

Julian P. Harrison, of El Paso, Tex., and W. C. Whatley, of Las Cruces, N. M., for appellee.

Before PHILLIPS, BRATTON, and HUXMAN, Circuit Judges.

BRATTON, Circuit Judge.

Section 36-101, N.M.Comp.St.1929, as amended by chapter 19, Laws of 1931, provides: "Whenever any person shall die from any injury resulting from, or occasioned by the negligence, unskillfulness or criminal intent of any officer, agent, servant or employee, whilst running, conducting or managing any locomotive, car, or train of cars, or of any driver of any stage coach or other public conveyance, while in charge of the same as driver; and when any passenger shall die from injury resulting from, or occasioned by any defect or insufficiency in any railroad, or any part thereof, or in any locomotive or car, or in any stage coach, or other public conveyance, the corporation, individual or individuals, in whose employ any such officer, agent, servant, employee, engineer or driver, shall be at the time such injury was committed, or who owns any such railroad, locomotive, car, stage coach, or other public conveyance, at the time any injury is received, resulting from, or occasioned by any defect or insufficiency above declared, shall forfeit and pay for every person or passenger so dying, the sum of Seven Thousand Five Hundred Dollars, which may be sued and recovered; first, by the husband or wife of the deceased; or second, if there be no husband or wife, or if he or she fails to sue within six months after such death, then by the minor child or children of the deceased; or third, if such deceased be a minor and unmarried, then by the father and mother; or fourth, if the deceased be over twenty-one years of age and unmarried, by a dependent father or mother or dependent brother or sister, who may join in the suit; and each shall have an equal interest in the judgment; or if either of them be dead, then by the survivor. In suits instituted under this section, it shall be competent for the defendant for his defense to show that the defect or insufficiency named in this section, was not of a negligent defect or insufficiency."

The statute was initially enacted in 1882, and was the first section of a general act relating to damages for wrongful death. As originally enacted it authorized the recovery of $5,000. By the amendment of 1931 the authorized sum was increased to $7,500, and a dependent father or mother or dependent brother or sister of an unmarried deceased over the age of twenty-one years was included among those entitled to maintain an action. The second and third sections in the original act were addressed to the recovery of compensatory damages in other cases of wrongful death, and with certain changes which are not material here they are now sections 36-102 and 36-104, N.M. Comp.St.1929.

A truck owned by defendant, doing business under the trade name Cain's Truck Lines, and operated as a duly authorized common carrier for hire between Oklahoma City and Los Angeles, and intermediate points, and an automobile owned and operated by Doctor L. M. Bowlby, of El Paso, Texas, collided on a public highway near Lordsburg, New Mexico, at about four o'clock in the morning. The doctor was killed instantly, and his surviving widow brought this suit to recover the sum of $7,500 for the death of her deceased husband and $800 for damages to the automobile. She charged negligence in the operation of the truck. Defendant denied such negligence and alleged contributory negligence. The jury returned a verdict for plaintiff for $7,500 for the death of the deceased and $600 for damages to the automobile. Reference will be made to the parties as they were designated below.

The cause of action for the death of the deceased is predicated upon section 36-101, as amended. The penal sum therein specified is sought, and plaintiff bottoms her claim exclusively upon that section. Defendant contends that the cause of action, if any, is not within that section but comes within section 36-102, and that under section 36-104 it is enforceable only by the personal representative of the estate of the deceased. By the common law a right of action for personal injuries is extinguished with the death of the person injured; no civil action may be maintained for a tort resulting in death. Mobile Life Insurance Co. v. Brame, 95 U.S. 754, 24 L.Ed. 580; The Harrisburg, 119 U.S. 199, 7 S.Ct. 140, 30 L.Ed. 358; Martin v. Baltimore & Ohio R. R. (Gerling v. Baltimore & O. R. Co.), 151 U.S. 673, 14 S.Ct. 533, 38 L.Ed. 311; Michigan Central R. R. v. Vreeland, 227 U.S. 59, 33 S.Ct. 192, 57 L.Ed. 417, Ann. Cas.1914C, 176; St. Louis, I. M. & S. Ry. v. Craft, 237 U.S. 648, 35 S.Ct. 704, 59 L. Ed. 1160; Romero v. Atchison, T. & S. F. Ry. Co., 11 N.M. 679, 72 P. 37. Section 36-101 is in derogation of the com-

mon law and is therefore to be strictly construed. Romero v. Atchison, T. & S. F. Ry. Co., supra; El Paso Cattle Loan Co. v. Hunt, 30 N.M. 157, 228 P. 888.

The pertinent part of the statute is limited to cases in which a person dies from injury caused or occasioned by the negligence, unskillfulness or criminal intent of an officer, agent, servant or employee of a railroad company while operating, conducting or managing a locomotive, car or train of cars, or a driver of a stagecoach "or other public conveyance" while in charge thereof as such driver. Does the general language "or other public conveyance" cover a truck engaged as a common carrier of freight? Where enumerated or designated classes of persons or things in a statute are followed by general words, the latter must be confined to persons or things reasonably of the same kind. That is the well-recognized rule of ejusdem generis. Grafe v. Delgado, 30 N.M. 150, 228 P. 601; Maxwell Lumber Co. v. Connelly, 34 N.M. 562, 287 P. 64. But like many others, it is merely a rule of construction to be used as an aid in ascertaining the legislative intent. State v. Anaya, 28 N.M. 283, 210 P. 567; State v. Ornelas, 42 N.M. 17, 74 P.2d 723.

At the time of the enactment of the statute in 1882 trucks were unknown. It therefore is manifest that the legislature could not have had them specifically in mind. And the statute was amended in 1931, after trucks had become and were a common type of carrier, and the amendment did not expressly include them or otherwise change the kinds or classes of torts for which recovery could be had. It was concerned with other matters. But the statute is prospective in character and comprehensive in scope in respect of the recovery of damages for death resulting from tort in the operation of locomotives, cars, stagecoaches or other public conveyances. And it is a general rule in the construction of statutes that legislative enactments in general and comprehensive terms, and prospective in operation, apply to persons, subjects and businesses within their general purview and scope, though coming into existence after their passage, where the language fairly includes them. Newman v. Arthur, 109 U.S. 132, 3 S.Ct. 88, 27 L.Ed. 883; Pickhardt v. Merritt, 132 U.S. 252, 10 S.Ct. 80, 33 L.Ed. 353; McMillan v. Noyes, 75 N.H. 258, 72 A. 759; Burton v. Monticello & Burnside Turnpike Co., 162 Ky. 787, 173 S.W. 144; Commonwealth v. Maxwell, 271 Pa. 378, 114 A. 825, 16 A.L.R. 1134; Gaiser v. Buck, 203 Ind. 9, 179 N. E. 1, 82 A.L.R. 1348; Equality Tp. v. Star Tp., 200 Minn. 316, 274 N.W. 219; In re Barnes, 212 N.C. 735, 194 S.E. 499; Acme Oil & Gas Co. v. Cooper, 168 Okl. 346, 33 P.2d 191; Pellish Bros. v. Cooper, 47 Wyo. 480, 38 P.2d 607. In Jerome H. Remick & Co. v. American Automobile Accessories Co., 6 Cir., 5 F.2d 411, 40 A. L.R. 1511, certiorari denied, 269 U.S. 556, 46 S.Ct. 19, 70 L.Ed. 409, it was held that the broadcasting by radio for profit of a copyrighted musical composition infringed the statutory copyright even though radio was developed after the enactment of the Copyright Act; in Re Fox Film Corporation, 295 Pa. 461, 145 A. 514, 64 A.L.R. 499, that a statute requiring the approval of the state board of censors to display a motion picture film applied to a production of the spoken language, although the Movietone processes of producing spoken language films were invented after enactment of the statute; in Haselton v. Interstate Stage Lines, 82 N. H. 327, 133 A. 451, 47 A.L.R. 218, that a statute relating to a person engaged in transportation by motor vehicle applied to companies operating high-powered and capacious busses catering to long distance transportation, despite the fact that such transportation was unknown at the time of the enactment of the statute; and in Bruce Transfer Co. v. Johnston, Iowa, 287 N.W. 278, that a statute providing that an action might be brought against any railroad corporation, the owner of stages, or other line of coaches or cars in any county through which such road or line passed or was operated applied to a company engaged in the operation of freight trucks of semi-trailer type upon a fixed schedule and over a regular route although that kind of transportation came into being long after the statute was enacted. Moreover, in Mallory v. Pioneer Southwestern Stages, 54 F.2d 559, this court reviewed this statute and said that a motor bus engaged in the transportation of passengers for hire was a public conveyance within its meaning. Motor busses were unknown at the time the statute was enacted, but the court manifestly concluded that they were sufficiently similar to stagecoaches to fairly come within its scope. That construction was placed upon the statute

almost ten years ago. The legislature of New Mexico has convened at regular intervals since then, and it has neither amended the statute nor otherwise indicated its disapproval of such construction.

■ The original statute was taken from Missouri. Romero v. Atchison, T. & S. F. Ry. Co., supra. Emphasizing that fact, defendant lays stress upon the case of Drolshagen v. Union Depot R. Co., 186 Mo. 258, 85 S.W. 344, in which it was held that the tort of a motorman of a streetcar did not come within the scope of the statute for the reason that at the time of its enactment streetcars and motormen were unknown. That case was decided long after the statute had been adopted in New Mexico. It therefore is entitled to respectful consideration but is not controlling under the doctrine that where a statute is adopted from another state it will be presumed that the construction previously placed upon it by the courts of that state is also adopted. The case of Whitmer v. El Paso & S. W. Co., 5 Cir., 201 F. 193, does not aid defendant as the court merely held that in respect to a railroad company the statute was confined to actions for death caused by tort in the operation of a locomotive or car or cars, and had no application where death was caused by falling through a hole in a railroad bridge or trestle. And Farmers' & Mechanics' National Bank v. Hanks, 104 Tex. 320, 137 S.W. 1120, Ann.Cas.1914B, 368, is clearly distinguishable. There the court held that a statute providing that an action could be maintained for damages where death was caused by the negligence or carelessness of the proprietor, owner, charterer or hirer of any railroad, steamboat, stagecoach, or other vehicle for the conveyance of goods or passengers, did not authorize recovery for death caused by negligence in the operation of an elevator in a privately owned building. But it was pointed out that the statute was meant to apply to agencies and carriers transporting goods and passengers from some point of origin to a more or less distant point of destination, and that therefore an elevator did not come within it.

■ The words "locomotive", "car", and "stagecoach" are words of well-known signification. They refer to and include quasi public corporations and agencies engaged in serving the public in the transportation of passengers and goods. Stagecoaches of pioneer days were engaged in the transportation for hire of passengers and property upon used thoroughfares. The predominant part of the business was transporting passengers, but property also was transported. Since their advent into the field of transportation, trucks have been engaged in the transportation for hire of property upon highways and thoroughfares. That was the business of defendant and it was the use to which the truck in question was put. Even though the statute is penal in character and in derogation of the common law thus requiring a strict construction, being general and comprehensive in respect to the recovery of damages for death caused by tort in the operation of a locomotive, car, stagecoach, or other public conveyance, and being prospective in operation, it applies to death occasioned by the wrongful act of the operator of a truck engaged as a common carrier for hire. It may be suggested in this connection that no sound reason exists for limiting the liability of the owner of a truck engaged as a common carrier for wrongful death to $7,500 while the owner of a truck otherwise used is liable for compensatory damages in such sum as the court or jury may fix. The suggestion seems to proffer its own answer. That is a question of policy for the legislature, not the courts.

■ Defendant contends that he is not liable for the reason that at the time of the accident the truck was being operated by an unauthorized person. In violation of the rule of defendant, the agent in charge of the truck as driver brought one Knight from Los Angeles and permitted him to operate it part of the time. Knight was at the wheel when the accident took place, and the agent in charge was asleep. But the truck was being operated for the benefit of defendant. The agent was in it and was in charge of it on the business of his principal. He failed to supervise or control the conduct of his substitute immediately prior to the accident. He did not intervene with action, protest or direction when either might have avoided the collision. If he had merely abandoned the wheel or had fallen asleep while driving and the truck had gone to the left side of the road and thus caused the accident defendant would clearly be liable. There is no substantial difference between that situation and this in point of liability. Defendant cannot be heard to escape liabil-

ity on the ground that Knight was at the wheel while the agent in charge slept beside him in the cab. Geiss v. Twin City Taxicab Co., 120 Minn. 368, 139 N.W. 611, 45 L.R.A.,N:S., 382; Jones v. Lozier, 195 Iowa 365, 191 N.W. 103; Grant v. Knepper, 245 N.Y. 158, 156 N.E. 650, 54 A.L.R. 845; Hendler Creamery Co. v. Miller, 153 Md. 264, 138 A. 1; Gates v. Daley, 54 Cal. App. 654, 202 P. 467.

■ It is urged that the court committed error in refusing to submit to the jury the question of contributory negligence of the deceased in the operation of the automobile. Two elements of contributory negligence were pleaded—driving the automobile on the wrong side of the highway, and driving it at an excessive rate of speed. The evidence was in conflict as to whether the truck or the automobile was on the wrong side of the road. The court submitted that issue in the form of a special interrogatory inquiring on which side the collision took place. The jury answered that it occurred on the north side. That was the right side of the automobile and the left side of the truck. Thus the issue of operating the automobile on the wrong side of the highway was squarely submitted to the jury and resolved against defendant.

■■ In respect to the driving of the automobile at an excessive rate of speed, the pertinent part of section 1, chapter 118, Laws of 1933, section 11-804, N.M. Supp.1938, provides that passenger automobiles may be operated at such speeds as shall be consistent at all times with safety and the proper use of the roads. Defendant relies upon the time consumed in coming from El Paso, the extent of damage to the automobile, marks or gashes in the highway, circumstances indicating the distance the automobile went after the collision, and other physical conditions as circumstances tending to establish negligence. The oil-top highway was eighteen feet wide; it had shoulders each from two to four feet wide, and a white line down its center; and there was a slight double curve in it at the point of the accident. The uncontradicted evidence was that the automobile was in perfect mechanical condition, and the only direct evidence relating to its speed was that it was going at between forty and forty-five miles per hour. Plaintiff testified that she saw the white line; that they were on the right side of it; that as the truck approached it did not seem to keep a straight course but meandered and weaved; that its lights bobbed and were not dimmed; that deceased dimmed his lights and pulled to the right; that as the truck approached she told him to pull farther to the right and give the truck all the room possible; that he did so but the truck came straight at them and bore down upon them; and that deceased did not apply his brakes. There was no other direct evidence whatever respecting the speed of the automobile, or the manner of its operation except that given by Knight to the effect that it was on the wrong side of the road, and the jury rejected it. And there was no testimony in respect to the distance between the two vehicles at the time the truck crossed to the left side of the road, or that deceased had time to slow or stop the automobile after the truck crossed and danger became apparent. It cannot be said that the driving of the automobile at from forty to forty-five miles per hour under the conditions presented here was inconsistent with the safety and proper use of the highway, or that the deceased failed to exercise ordinary care in not slowing or stopping the automobile. In other words, there was no substantial evidence from which it could be reasonably inferred that the speed of the automobile was inconsistent with the safety and proper use of the road or had any causal connection with the accident, or that by the exercise of ordinary care and prudence deceased should have slowed or stopped the automobile after it became apparent that the truck was crossing to the wrong side of the road. It follows that the court properly refused to submit the issue to the jury.

■ ■ Defendant further contends that plaintiff was not authorized to sue in her individual capacity for the damage to the automobile. Plaintiff and a daughter were the sole heirs of deceased. He left a will. After making a cash bequest to his daughter, he bequeathed the rest, residue and remainder of his estate to his wife. And he named her as independent executrix with direction that no bond or other security be required of her, and that the county court or any other court in probating the will should take no action in respect to the estate except to require the making and return of an inventory, appraisement and list of claims. The will was probated in the

county court of El Paso County, Texas; plaintiff was appointed and qualified as independent executrix; she filed an inventory, appraisement, and list of claims, and the court approved them in September, 1938; and she has paid in full all debts of the estate and the cash bequest to the daughter. The making of such a will in Texas is expressly authorized by statute. Article 3436, Revised Civil Statutes, 1925. And such an independent executrix can do anything in respect to the estate that an administrator could do under order of the county court, Cockrell v. Lovejoy, Tex.Civ.App., 44 S.W.2d 1040, affirmed, Tex.Com.App., 63 S.W.2d 1009, including the making of distribution of property belonging to the estate to heirs or devisees without specific judicial authority or sanction, Parks v. Knox, 61 Tex.Civ.App. 493, 130 S.W. 203. After payment of the debts and the cash bequest, plaintiff as residuary legatee became entitled to all of the property belonging to the estate. And as independent executrix she had power and authority to convey it to herself individually as such legatee. Compare Cockrell v. Lovejoy, supra; Parks v. Knox, supra. No formal transfer in writing of this claim against defendant was required. Her assertion in this suit of the right to enforce such claim must be construed as constituting an implied assignment thereof to herself individually as legatee.

The remaining contention is that no competent evidence was introduced to prove the amount of the damage to the automobile, that the finding of the jury in that respect was without support, and that the court erred in entering judgment for it. We do not stop to delineate the evidence relating to the question. It suffices to say that we think it was enough in kind and quantum to enable the jury to make a fair and reasonable approximation.

The judgment is affirmed.

PHILLIPS, Circuit Judge (dissenting). Sec. 36-101, N.M.Supp.1938, in part reads:

"Whenever any person shall die from any injury resulting from, or occasioned by the negligence, unskillfulness or criminal intent of any officer, agent, servant or employee, whilst running, conducting or managing any locomotive, car, or train of cars, or of any driver of any stage coach or other public conveyance, while in charge of the same as driver; * * *."

It will be observed that the quoted provision embraces two classes of persons—(1) any officer, agent, servant, or employee while running, conducting, or managing any locomotive, car, or train of cars, and (2) any driver of any stage coach or other public conveyance while in charge of the same as driver. The precise question presented, then, is whether the driver of a freight truck which was being operated as a common carrier for hire falls within the phrase "driver of any stage coach or other public conveyance."

This statute, being in derogation of common law, must be strictly construed.[1]

Sec. 18, Art. IV, of the New Mexico Constitution provides:

"No law shall be revised or amended, or the provisions thereof extended by reference to its title only; but each section thereof as revised, amended or extended shall be set out in full."

Where an existing statute is amended and certain portions of the original act are carried into the amended act, such portions are regarded as a continuation of the existing law and not as a new enactment, and are to be given the same meaning and effect they had before the amendment.[2] It follows that the 1931 amendment did not change the meaning and effect of the phrase "driver of any stage coach or other public conveyance."

I agree that the phrase "other public conveyance" is not limited to conveyances in use at the time the original statute was enacted, but it is my view that it should be limited to conveyances like or analogous to a stage coach.[3] A stage coach is a conveyance running regularly from one place to another employed chiefly for the transpor-

[1] El Paso Cattle Loan Co. v. Hunt, 30 N.M. 157, 228 P. 888.

[2] Thompson v. Mossburg, 193 Ind. 566, 139 N.E. 307, 310, 141 N.E. 241; Huff v. Fetch, 194 Ind. 570, 143 N.E. 705, 707; City of Chicago v. Foley, 335 Ill. 584, 167 N.E. 779, 781; State ex rel. Dean v. Daues, 321 Mo. 1126, 14 S.W.2d 990, 1002; Homnyack v. Prudential Insurance Company, 194 N.Y. 456, 87 N.E. 769, 771; People v. Lloyd, 304 Ill. 23, 136 N.E. 505, 536; People v. W. A. Wiebolt & Co., 357 Ill. 208, 191 N.E. 689, 690, 93 A.L.R. 789.

[3] See Drolshagen v. Union Depot R. Co., 186 Mo. 258, 85 S.W. 344; Mallory v. Pioneer Southwestern Stages, Inc., 10 Cir., 54 F.2d 559.

tation of passengers, mail and baggage.[4] A freight truck is not employed for the carriage of passengers, mail, or baggage. It is employed to carry heavy freight. It is substantially unlike a stage coach. Had the legislature intended to embrace freight trucks, I think in the 1931 amendment it would have added to the phrase "locomotive, car, or train of cars" apt phraseology to include "freight trucks."

If the statute is to be construed as held by the majority, the owner or operator of a freight truck is placed in a special category and his liability for wrongful death is limited to $7,500. On the other hand, a private owner or operator of a truck or an operator of a truck as a private carrier, who negligently causes a wrongful death, would come within § 36-102, N.M.Stat.Ann. 1929, and would be liable for full compensatory damages which, in most cases of wrongful death, will substantially exceed $7,500. A carrier of passengers by train, stage, or bus might suffer an accident where a large number of passengers would be killed and where the aggregate liability would be very large. There is some reason to limit the liability of such a carrier. No such reason exists with respect to a freight truck which does not carry passengers. Moreover, the public highways belong to the public and their primary and preferred use is for private purposes. Their use for purposes of gain is special and extraordinary.[5] It is unreasonable and unjust to prefer the public carrier making use of the public highway for the purposes of gain which is a special and extraordinary use, by limiting his liability for wrongful death to $7,500 and subjecting the private user, for whom the highway is primarily provided, to unlimited liability for wrongful death. I cannot think it was intended by the legislature to subject private operators of trucks on the public highways to unlimited liability in damages for wrongful death and to limit the liability of the public operators of trucks to $7,500. Such a limitation in favor of the public carrier would be manifestly unreasonable and unjust and I do not think an intent so to prefer should be attributed to the legislature in the absence of plain language in the statutory enactment manifesting such intent.

For these reasons, I think the court should have directed a verdict in favor of the defendant on the claim for wrongful death.

---

[4] Talcott Mountain Turnpike Co. v. Marshall, 11 Conn. 185, 190–192; Burton v. Monticello & Burnside Turnpike Co., 162 Ky. 787, 173 S.W. 144, 147; Burton v. Monticello & Burnside Turnpike Co., 109 S.W. 319, 33 Ky.Law Rep.

85; Cincinnati, L. & S. Turnpike Co. v. Neil, 9 Ohio 11, 13.

[5] Stephenson v. Binford, 287 U.S. 251, 264, 53 S.Ct. 181, 77 L.Ed. 288, 87 A.L.R. 721; Packard v. Banton, 264 U.S. 140, 144, 44 S.Ct. 257, 68 L.Ed. 596.