## THE O. L. HALLENBECK.

### OLSEN v. CAHILL.

(District Court, E. D. New York. November 26, 1902.)

1. **TOWAGE—NEGLIGENCE OF TUG—LIABILITY FOR LOSS OF TOW.**
    While a tug was engaged in towing two scows from New York to the dumping grounds and return in the evening, one of the scows went adrift, and was lost with the man in charge. The tug did not discover the loss until four hours afterward, on the return trip. The sea was rough, requiring vigilance, and the night was clear. Also, after the scow went adrift, two other vessels in the vicinity blew alarm signals to call the tug's attention to her, and the master noted that two lights were absent from the tow, but no further investigation was made. *Held*, that the tug was chargeable with gross negligence and inattention to her tow, which rendered her liable for the loss.

2. **ADMIRALTY—TORTS CAUSING DEATH—RECOVERY OF DAMAGES.**
    The next of kin of a scowman, lost through the negligence of a tug, were two sisters who supported themselves, but it was shown that the deceased had promised to take them back to Norway to live and to supply the money required. *Held*, that such evidence was sufficient to warrant the court in awarding damages for the death against the owner of the tug in the sum of $500.

In Admiralty. Suit against a tug for the loss of a scow, and action against the owner to recover for the death of the scowman.

Albert A. Wray, for Morris & Cumings Dredging Co.

Fredk. W. Rowe, for Olsen and Albert A. Wray, advocate.

James J. Macklin, proctor for claimant and respondent.

THOMAS, District Judge. In February, 1901, the tug Hallenbeck undertook to tow two scows to and from the mud buoy off Sandy Hook Lightship, and on the way No. 38, the after scow, went adrift, at about 8 o'clock in the evening, and was lost with her scowman. None of the 10 men on the tug discovered the loss until, after rounding the dumping buoy, the tug reached Craven Shoals, at about 12 o'clock midnight, on her return trip. Thus for four hours the Hallenbeck went on her way, at least one hour of the time outward bound, and for three hours inward bound, and did not know that half of the burden of her tow had been released. Such failure to know the condition of her tow seems impossible in the employment

of ordinary care. Why should she have known it? The observance of requisite oversight of her tow should have revealed it. The wind was blowing a gale, and this, with the tide, made rough water. This condition demanded vigilance. The night was clear. This promoted discovery. Moreover, two tugs in the neighborhood of the tow blew alarm signals to call attention to the scow adrift; those on the tug heard, and the captain and others on the tug claim to have looked back. A lantern was waved by some one on the tow; the mate in actual charge of the tug at the time saw it; he called the master, who looked with glasses, and discovered that two lights were absent on the tow, but he did nothing by way of investigation. The master and the mate heard the alarm whistles, the mate saw the waving light, the master saw that two lights were missing. Why was nothing done? The excuse of the captain is, variously, that he thought his tow was crowding the other tows; that the scows were asking for an opportunity to extend their sea line; but the variety of his explanations impairs the validity of his excuse.

It may be that the contentions of the claimant and respondent respecting other accusations of negligence are correct; that is not determined. The startling fact is that such was the gross inattention of those navigating the tug that one of the vessels in tow went adrift and was lost, with the man on board, and the discovery was made only after four hours. Whatever the tug had done or had not done, either by way of vigilance or omission in other respects, this failure to keep track of her tow, and render assistance to a part that had gone adrift, seems such inexcusable negligence that there is no hesitation in awarding a decree for the loss of the scow. The fact that the mate, unlicensed for such service, was in charge of the tug, and that there were two women aboard of the tug, in violation of law and good morals, may account for the preoccupation of the captain and mate.

The next of kin were sisters of the deceased scowman. They were supporting themselves. There had been conversation between them and the deceased that at some time they would go back to Norway and live upon a farm owned by the decedent. There is evidence that he had promised to supply the money for the return of the sisters to Norway. This evidence does not furnish a very substantial basis for pecuniary damages, but, employing the latitude that is permitted, it is considered that there was some financial loss, and that the damages on account of the death amounted to the sum of $500, for which sum the administratrix will have a decree.