MANDEVILLE v. COURTRIGHT et al.

(Circuit Court of Appeals, Third Circuit. December 28, 1905.)

No. 58.

1. CORPORATIONS—CONDUCTING ILLEGAL BUSINESS—LIABILITY OF STOCKHOLDERS FOR TORTS.

Defendants, all of whom were stockholders and officers of a company incorporated in New Jersey, caused to be conducted in the state of Pennsylvania, in the name of the corporation, the business of dentistry, which

142 F.—7

the corporation had no charter right to carry on there, and which was in violation of a law of the state. Plaintiff, in ignorance of the existence of such a corporation, and supposing that she was in the hands of licensed dentists, submitted to an operation by an authorized employé of the establishment, who performed the work so negligently as to fracture plaintiff's jawbone and cause her serious injury. *Held*, that defendants could not avoid personal liability for the injury by setting up the charter of the company, but that, each having knowingly and actively participated in conducting the business in violation of law, they were liable as partners for all acts done therein.

2. PHYSICIANS AND SURGEONS—CAUSING TREATMENT OF PATIENT BY UNLICENSED DENTIST—EXEMPLARY DAMAGES.

Exemplary damages are recoverable from defendants, who, in conducting the business of dentistry, caused plaintiff to be operated on by an employé who was unlicensed as a dentist, and through whose negligence and want of skill she suffered a severe injury.

Bradford, District Judge, dissenting.

In Error to the Circuit Court of the United States for the Eastern District of Pennsylvania.

For opinion below, see 126 Fed. 1007.

Russell Duane and C. L. Smyth, for plaintiff in error.

A. B. Repetto and E. A. Anderson, for defendants in error.

Before ACHESON and GRAY, Circuit Judges, and BRADFORD, District Judge.

ACHESON, Circuit Judge. The plaintiff's statement of claim sets forth that the defendants, under the name of Alba Dentists Company, were engaged in the practice of dentistry in the city of Philadelphia, at No. 1002 Market street, and that on or about May 11, 1903, they undertook and agreed to furnish to the plaintiff a set of teeth, and to extract the necessary teeth, and that in the doing of the work, an employé of the defendants, who was operating upon the plaintiff's mouth by and under the authority of the defendants, negligently and carelessly fractured the plaintiff's jawbone, causing her great and permanent injury. The jury rendered a verdict in favor of the plaintiff for the sum of $4,000, whereof they reported by way of special verdict that the sum of $1,500 was assessed as punitive damages, subject, however, to the reserved questions of law: First, "whether there is any evidence to go to the jury in support of the plaintiff's claim"; second, "whether there is any evidence to go to the jury in support of the plaintiff's claim for exemplary damages." Subsequently the court entered judgment for the defendants non obstante veredicto.

It appeared that in March, 1901, some of the defendants procured a charter from the state of New Jersey incorporating a company named Alba Dentists Company. At the trial of this case the learned judge below charged the jury "that the charter of New Jersey did not give to the corporation, to which that charter related, the power to practice dentistry in Pennsylvania"; and in his opinion disposing of the case on the reservation, the judge said:

"I will assume, without deciding, that the Alba Dentists Company, in practicing dentistry, exceeded the powers conferred upon it by the state of New Jersey, and that by its pursuit of that calling in Pennsylvania it violated the law of that commonwealth."

We agree that its charter did not authorize the Alba Dentists Company to practice dentistry in Pennsylvania, and that by the law of Pennsylvania the company was forbidden to practice dentistry in the latter state. The law of Pennsylvania by which this company is so forbidden is the act of assembly of July 9, 1897 (P. L. 206). In the case of Commonwealth ex rel. Attorney General v. Alba Dentists Company, 13 Pa. Dist. R., 432, which originated since the plaintiff's cause of action arose, in the court of common pleas of Dauphin county, Pa., which is the state court having special statutory cognizance of actions quo warranto, it was held that the Alba Dentists Company (id est, the very company with which we are concerned) could not lawfully practice dentistry in Pennsylvania, and judgment of ouster was entered against the corporation.

It appeared from the evidence that all of the six defendants were stockholders of the Alba Dentists Company before and at the time when the plaintiff made her contract for dental work and suffered the injury complained of. But this was not all. There was evidence to show that five of the defendants, namely, Courtright, Mayer, Ridge, Powell, and Brown, were officers of the company, filling, respectively, the positions of president, vice president, treasurer, secretary, and solicitor, and that the other defendant, Noppel, was a director of the company. The defendants Ridge and Brown, the treasurer and solicitor, were also directors of the company. It was shown that two of the defendants, namely, Courtright and Powell, were engaged in the active management of the business at the company's offices at No. 1002 Market street, Phildelphia, where the business of dentistry was carried on in the name of Alba Dentists Company, and it was further shown that each of the other four defendants from time to time visited these offices. There was ample evidence to justify the jury in finding that all the defendants had knowledge that the practice of dentistry was being carried on under the name of Alba Dentists Company at said offices and that all of them assented thereto and that they were associated in the conduct of the business.

The evidence showed that the plaintiff went to the company's offices at No. 1002 Market street, on May 11, 1903, and contracted to have the desired dental work done. The plaintiff testified that she did not know that the Alba Dentists Company was a corporation, and that she supposed she was dealing with licensed dentists. The court instructed the jury that, if the plaintiff dealt with the corporation with knowledge that it was a corporation, she would be estopped from raising the question whether or not it was acting within its powers, and would be precluded from holding the defendants liable. The verdict being for the plaintiff, it must be taken that the jury found that she had not knowingly dealt with the corporation. There was evidence to show that during the progress of the dental work for which the plaintiff had contracted one Louis Solomon, who was an employé at this establishment, but who had no license to practice dentistry, after consultation with the defendant Powell, the then acting manager of the establishment, and by Powell's direction, extracted a piece of the plaintiff's upper jawbone, upon the erroneous supposition that it was a root or piece of process; the result being a badly broken jaw.

The case, then, as we read the record, is this: The defendants, who were stockholders and officers of a company incorporated in the state of New Jersey, caused to be conducted in the state of Pennsylvania, in the name of the corporation, the business of dentistry, which the corporation had no charter right to carry on there and which it was expressly forbidden to carry on in Pennsylvania by the law of the latter state. The plaintiff, in ignorance of the existence of such a corporation, and supposing that she was in the hands of licensed dentists, submitted herself to an authorized employé of the establishment, who operated upon her mouth so negligently and carelessly as to fracture her jawbone and cause her serious injury. Such being the case, can the defendants escape personal liability to the plaintiff by setting up the charter of the company? We think not. To all intents and purposes, the defendants acted without any charter at all, for the New Jersey charter gave no warrant to the corporation to practice dentistry in Pennsylvania and the Pennsylvania statute prohibited the corporation to practice dentistry in that state. The defendants were bound to know that their corporation was forbidden by law to practice dentistry in Pennsylvania, and it seems to us that by the use of the name of the corporation they could not avoid personal liability for what they did. The defendants were not innocent nonassenting stockholders, but they were concerned knowingly and actively in the conduct of an illegal business carried on in the name of the corporation. What was being carried on at their establishment, the practice of dentistry, the corporation could not conduct. This the defendants were bound to know. What, therefore, the corporation could not do, they could not, under the guise of its charter, carry on. And hence they must be conclusively held to have done themselves what was actually done. In a word, these defendants, in view of their knowledge and active participation, cannot be heard to say that what they were causing to be done, was not being done by them but by their corporation, when that corporation could not conduct the business and they knew that it could not.

If parties, even though organized as a corporation, knowingly conduct business wholly outside of the charter powers, or make use of the statutory organization to act in fraud of the laws of the state, for the sake of profit, their relation is that of partners. 1 Bates on Partnership, § 6. In Medill v. Collier et al., 16 Ohio St. 599–613, it was held that persons who carry on a banking business in the name of a banking corporation in violation of a provision of a statute which forbids the bank to engage in such business until it has deposited with the auditor of the state certain prescribed securities, are not protected by the corporate privileges from personal liability for the debts contracted by them in the transaction of such unlawful business. The court there said:

"Without undertaking to determine how far the principle may be extended, it is decisive of this case to hold, as we do, that, where the entire business carried on by persons in the name of the corporation is such as the corporation is prohibited by law from doing, they cannot interpose the corporate privileges between them and the liabilities which the law imposes upon individuals in the transaction of similar business without the use of the corporate name."

That case is also authority for the proposition that innocent, non-assenting stockholders are not personally responsible for liabilities incurred in such unlawful business, but only those who authorize or sanction the unlawful undertakings are personally liable.

In Ridenour v. Mayo, 40 Ohio St. 9, it was held that where trustees, selected and qualified under an act for the establishment of savings societies, did nothing in execution of the corporate power, the existence of the corporate agency will not shield them from individual liability in an action on a contract entered into by them in conducting business foreign to the objects and purposes of the incorporation.

As the practice of dentistry in Pennsylvania by the defendants' corporation was both unauthorized by its charter and positively forbidden by law, we are not able to see upon what just principle the defendants can avoid personal responsibility for what they caused to be done in the name of the corporation. They were the real actors—the actual wrong-doers—in the setting up and carrying on of this unlawful business.

Finally, it is an established rule in Pennsylvania that incorporators who transact business upon the strength of an organization which is materially defective under the enabling statute, are individually responsible as partners to those who deal with them without knowledge of the incorporation. Guckert v. Hacke et al., 159 Pa. 303, 28 Atl. 249; New York National, etc., Bank v. Crowell et al., 177 Pa. 313, 35 Atl. 613. The principle of these cases applies, we think, to the present case, for the business of dentistry, which these defendants set on foot and caused to be carried on in Pennsylvania in the name of their corporation, was entirely outside of its charter powers and was forbidden by the Pennsylvania statute. In fact, there was no charter applicable to the business.

With reference to the matter of exemplary damages, little need be said. The charge of the court upon that branch of the case was unexceptionable and very fully and clearly stated the rules of law governing the subject. There was evidence that the operator upon the plaintiff's jaw was unlicensed as a dentist. The operation itself called for experience, knowledge, and skill. These the person who operated seemed to have lacked. It was a great wrong to the plaintiff and a reckless indifference to her welfare to put her in the hands of such an incompetent person. Moreover, the evidence justified a finding by the jury that he acted with reckless disregard of the consequences to the plaintiff in extracting from her jaw what he supposed to be a root or piece of process, but what was, in fact, a portion of her jawbone. We think that the facts disclosed by the evidence fully justified the jury in awarding to the plaintiff exemplary damages.

The judgment of the Circuit Court is reversed, and, rendering the judgment which that court ought to have rendered, we now enter judgment in favor of the plaintiff and against the defendants on the verdict for $4,000, with interest from the date of the verdict, October 24, 1903, with costs in the court below and in this court.

BRADFORD, District Judge, dissents.