WHITMER v. EL PASO & S. W. CO.

(Circuit Court of Appeals, Fifth Circuit.   December 17, 1912.)

No. 2,356.

1. DEATH (§ 31*)—ACTION FOR WRONGFUL DEATH—STATUTORY PROVISIONS.

Comp. Laws N. M. 1897, §§ 3214, 3215, authorizing an action for wrongful death in the name of the personal representative of decedent, and providing for the distribution of the recovery among enumerated kindred, and, if no such kindred, to be distributed as personal property of deceased persons is distributed, and sections 2033 and 2036, providing for the distribution of the estates of decedents, confer a right of action for wrongful death on the administrator of decedent, authorize the recovery of damages and for the distribution thereof, and the right of action is not dependent on decedent leaving surviving him a mother, brother, or other kindred.

[Ed. Note.—For other cases, see Death, Cent. Dig. §§ 35–46; Dec. Dig. § 31.*]

2. DEATH (§ 49*)—WRONGFUL DEATH—DAMAGES.

Where the statute authorizes an action for wrongful death by the administrator of decedent for exemplary and compensatory damages and directs the distribution of the sum recovered, an action may be brought by the administrator without naming the distributees, and alleging their respective rights, and the sum recovered by the administrator is held in trust by him as administrator for distribution as the law directs.

[Ed. Note.—For other cases, see Death, Cent. Dig. §§ 64–66, 69; Dec. Dig. § 49.*]

3. DEATH (§ 86*)—ACTION FOR DEATH—DAMAGES—QUESTION FOR JURY.

Comp. Laws N. M. 1897, § 3215, authorizing the jury in an action for wrongful death to give such damages, compensatory and exemplary, as they shall deem fair and just, taking into consideration the pecuniary injury resulting from the death and the mitigating or aggravating circumstances, makes the amount of compensatory and exemplary damages such as the jury shall deem fair and just, taking into consideration the pecuniary injury, which includes prospective pecuniary loss resulting from the death, based on circumstances of probability of benefit.

[Ed. Note.—For other cases, see Death, Cent. Dig. §§ 112–114, 119; Dec. Dig. § 86.*]

4. DEATH (§ 93*)—ACTION FOR WRONGFUL DEATH—STATUTES—OBJECT.

The statutes allowing damages for death by wrongful act or neglect have for their purpose more than compensation, and it is intended by them to promote safety of life and limb by making negligence causing death costly to the wrongdoer.

[Ed. Note.—For other cases, see Death, Cent. Dig. § 98; Dec. Dig. § 93.*]

5. DEATH (§ 77*)—ACTION FOR WRONGFUL DEATH—DAMAGES.

Under Comp. Laws N. M. 1897, § 3215, authorizing the jury in an action for wrongful death to give such damages, compensatory and exemplary, as they shall deem just, considering the pecuniary injury resulting from the death to the surviving parties entitled to any interest in the recovery, compensatory damages depend on pecuniary loss; and, where a child is killed, proof of the age, sex, health, habits, and disposition of the child, together with its mode of living and the relatives surviving it, justifies the award of substantial compensatory damages.

[Ed. Note.—For other cases, see Death, Cent. Dig. § 96; Dec. Dig. § 77.*]

**6. DEATH (§ 93*)—WRONGFUL DEATH—DAMAGES—EXEMPLARY DAMAGES.**

Under Comp. Laws N. M. 1897, § 3215, authorizing the jury in an action for wrongful death to award compensatory and exemplary damages, having regard in estimating exemplary damages to the mitigating and aggravating circumstances attending the death, exemplary damages are recoverable only for a willful death, and, where the acts causing the death fall short of willful misconduct, exemplary damages may not be given.

[Ed. Note.—For other cases, see Death, Cent. Dig. § 98; Dec. Dig. § 93.*]

**7. DAMAGES (§ 91*)—EXEMPLARY DAMAGES—NEGLIGENCE—"WILLFUL NEGLIGENCE."**

Negligence which shows a reckless indifference to consequences and to the rights and safety of others is the equivalent of willful wrong," and justifies the allowance of exemplary damages, and where a person from his knowledge of existing circumstances is conscious that his conduct will probably result in injury to others, and yet with reckless indifference does the act or fails to do the act and injury results, there is a liability for exemplary damages.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 193–201; Dec. Dig. § 91.*

For other definitions, see Words and Phrases, vol. 8, pp. 7483–7484.]

**8. DAMAGES (§ 208*) — EXEMPLARY DAMAGES — ASSESSMENT — QUESTION FOR COURT AND JURY.**

Whether there is any evidence to justify exemplary damages is for the court, but where there is evidence from which the jury may find that the wrongdoer was guilty of such negligence as justifies exemplary damages, the question is for the jury.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 54, 64, 68, 132, 144, 205, 220, 533, 534; Dec. Dig. § 208.*

Death by wrongful act, punitive damages, see note to McGee v. McCarley, 44 C. C. A. 259.]

**9. COURTS (§ 96*)—CONTROLLING DECISIONS—DECISIONS OF COURT OF TERRITORY.**

The decision of the court of last resort of a territory construing a statute of that territory is entitled to respect by a court of the United States, but it is not so controlling as a like decision of a state court of last resort.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 325, 327, 328; Dec. Dig. § 96.*

Conclusiveness of judgment between federal and state courts, see notes to Kansas City, Ft. S. & M. R. Co. v. Morgan, 21 C. C. A. 478; Union & Planters' Bank of Memphis v. City of Memphis, 49 C. C. A. 468.]

**10. DEATH (§ 14*)—ACTION FOR WRONGFUL DEATH—STATUTES.**

Comp. Laws N. M. 1897, § 3213, authorizing an action for death caused by the negligent management of any locomotive or train, does not apply to an action for the death of a child stepping into a hole in a railroad bridge while walking across it pursuant to a habitual custom of children and adults to walk over the bridge, but an action for his death is governed by section 3214, authorizing an action for negligent death.

[Ed. Note.—For other cases, see Death, Cent. Dig. § 16; Dec. Dig. § 14.*]

In Error to the District Court of the United States for the Western District of Texas; Thomas S. Maxey, Judge.

Action by Victoria Whitmer, administratrix, against the El Paso & Southwestern Company. There was a judgment for defendant, and plaintiff brings error. Reversed and remanded.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Waters Davis and James M. Goggin, both of El Paso, Tex., for plaintiff in error.

John Franklin and W. M. Peticolas, both of El Paso, Tex. (W. A. Hawkins, of El Paso, Tex., on the brief), for defendant in error.

Before PARDEE and SHELBY, Circuit Judges, and FOSTER, District Judge

SHELBY, Circuit Judge. The defendant owned and operated a railroad that extended into New Mexico. On the road near Cloud-croft, in that state, there was a bridge or trestle. The bridge had been used for a long time by adults and children as a passway. Near the bridge were public resorts, and the bridge was attractive to children who constantly used it as a passway, with the knowledge and consent of the defendant. For a long time it was in a safe condition, containing no gaps or pitfalls. Before the 19th of June, 1910, the defendant moved a plank from the bridge, or made a break or hole in the bridge, and left it in that condition. On that day Samuel Wood Whitmer, then 13 years old, walked onto the bridge, as children and adults did habitually, and stepped into the hole or place so left open, fell through to the ground, and lost his life. He left surviving him as next of kin his mother and a brother ten years old. The mother was appointed administratrix of her deceased son by the proper Texas court, and, as administratrix, brought this suit to recover damages for the death. The petition, which copies the statutes of New Mexico allowing suits for wrongful death, contains an elaborate statement of the facts relating to the accident and death, and claims damages for the benefit of the mother and brother of the deceased. Evidence was offered which proved the death as alleged, and which tended to prove the facts constituting defendant's negligence as alleged. We do not elaborate the statement as to the proof of negligence, because we do not understand that it was claimed that there was no evidence on which to go to the jury on that point. The contention of the defendant seems to have been that the evidence showed no right of recovery for the benefit of the mother or the brother.

The mother, Mrs. Victoria Whitmer, testified as follows:

"My boy, who was killed, was a very large boy for his age, and very strong, and I considered him very bright, and, above all this, he was a very good boy, and stayed with me very closely. He was large for his age, heavy, healthy, and intelligent. His habits were good. He was the best child I ever knew, and one of the most affectionate of children to both myself and his brother. He was very industrious. He was not engaged in any employment at the time of his death, but delivered Saturday Evening Posts. I had asked for a Herald route for him, but he had never worked at it. I had asked friends to try and help him to get one the following year. He was affectionate to his brother, and really took care of him. He was of a generous nature, not selfish at all. He gave me a great deal of assistance around home; that is, as far as a little boy of his age can. He assisted me in my household affairs. Both these children lived with me up to the time of my little boy's death, and were supported by me. His little brother never did any work. He depended upon his brother Sam for everything. * * * I always helped them both. He simply helped his brother in one way only. He tried to make him good and like he was. Sam was a very obedient child, and helped me in that way

only. * * * I could not give the particulars as to how Sam helped his younger brother, but can only say he helped him in every way. He just treated him as a little brother, and did everything for him. Of course, I have been away from home, and Sam did everything for him. I was away most of the time attending my classes. The dead boy always looked upon his younger brother as a little bit of brother. The dead boy was physically much the stronger, and perhaps would have made a much stronger man in every way. He was a more reliable boy than the little fellow, and he was superior and more like a grown person. My little boy Alfred seemed like a baby in comparison with him. The other boy assumed the responsibility because I was alone. There was three years difference in their ages. Sam, the deceased boy, did for both of us all the time. He was not of any pecuniary or financial assistance. He gave us physical assistance always. He gave me general assistance in running around the house and taking care of his brother. He cared for me in every way because he knew I relied upon him. * * * I am a school teacher. I have been teaching about seven or eight years. I have one little child. His name is Alfred Whitmer. He is now 11 years old. I had another son whose name was Samuel Wood Whitmer. These two children are the only children I ever had. Samuel Wood Whitmer died on the 19th day of June, 1910. He was 13 years old at the time of his death. He lost his life at Cloudcroft on that day. The 19th was Sunday. I had taken a cottage at Cloudcroft, and was there to spend the summer at Cloudcroft, and had taken the children along with me."

The rulings on the pleadings in the progress of the case were to the effect that there could be no recovery for the benefit of the mother; and, after the evidence of the plaintiff was offered, on motion of the defendant, the jury was instructed to find for the defendant, on the ground that there could be no recovery, upon the record and evidence, for the benefit of the brother of the deceased. That the court directed a verdict for the defendant is assigned as error.

[1] 1. The statutes on which the suit is based, and those which are referred to in the opinion, are found in the Compiled Laws of New Mexico of 1897, and for convenience of reference are copied in a note,[1] the parts to which attention is especially called being put in italics.

Section 3214, on which the action is based, is similar to a provision found in the laws of many of the states, and, in brief, gives an action for damages where death is caused by the wrongful act, neglect, or default of any person or corporation, in cases in which the wrongdoer would have been liable to the party injured if death had not occurred. It prevents the civil right of action from being merged in the felony, if the wrong should be a felony, and preserves the right of action for the wrong, notwithstanding the death from the injury. · Section 3215 provides that every action under section 3214 shall be brought by and in the name of the personal representative of the decedent, and that the jury may give such damages, compensatory and exemplary, as they shall deem fair and just, taking into consideration the pecuniary injury or injuries resulting from such death to the surviving party or parties entitled to the judgment or any interest therein, and also having regard to the mitigating or aggravating circumstances attending such wrongful act, neglect, or default. The section also provides that the recovery shall not be subject to the debts

1 See note at end of case.

of the decedent, if the decedent leaves surviving him certain kindred, naming, among others, "mother" and "brother." It further provides that the sum recovered shall be distributed among certain named relatives, if there be such, and, if not, then "to be disposed of in the manner authorized by law for the distribution of the personal property of deceased persons." And one of the sections relating to the distribution of estates is as follows:

"If the intestate leave no issue, the whole of his estate shall go to his wife; if he leaves no wife, the portion which would have gone to her shall go to his parents. If one of his parents be dead, the portion which would have gone to such deceased parent, shall go to the surviving parent." Section 2033, Compiled Laws of New Mexico of 1897.

There are other statutes providing for the distribution of the estates of decedents which have no application on the facts of this case; and then section 2036 provides that, in default of all named distributees, the property of the decedent would escheat to the territory. It is therefore plain that the statute confers the right of action on' the administrator of the decedent, authorizes the recovery of damages both compensatory and exemplary, and provides for the distribution or disposition of the amount recovered under any state of facts that could exist. The administrator's right of action is not dependent on the decedent's leaving surviving him a mother, brother, or other kindred. This is clear, without referring to other parts of the statute, from the allowance of exemplary damages, and from the provision for disposing of the funds recovered by the personal representative when there is no next of kin.

[2] 2. Under the Texas statutes allowing actions for death, the law requires the amount recovered to be divided by the verdict of the jury among those entitled to it "in such shares as the jury shall find and direct." Under that statute, the failure to apportion the damages, objection being duly made, is reversible error. Railway Co. v. Moore, 49 Tex. 31, 30 Am. Rep. 98. Doubtless the construction of the Texas statute, familiar in that state, led to superfluous averments, and caused the petition to be framed in other respects more in accordance with the Texas statute than the New Mexico statute on which the suit is based. The statute of New Mexico contains no provision requiring the jury to apportion the damages. When the law authorizes suit by the administrator for compensatory and exemplary damages, and directs that the sum recovered be paid to certain relatives, and, if there are no such relatives, that it be distributed under the laws providing for the distribution of estates of intestates, it is obvious that a suit may be brought under the statute by the administrator without naming the distributees and alleging their respective rights. Budd, Adm'r, v. Meriden Electric R. R. Co., 69 Conn. 272, 284, 37 Atl. 683; Searle v. Railway Co., 32 W. Va. 370, 372, 9 S. E. 248; Harper v. Norfolk & W. R. Co. (C. C.) 32 Fed. 102, 104; Roach v. Imperial Mining Co. (C. C.) 7 Fed. 698; Columbus & Western Ry. Co. v. Bradford, 86 Ala. 574, 6 South. 90; Howard v. Delaware & H. Canal Co. (C. C.) 40 Fed. 195, 6 L. R. A. 75. Under such stat-

utes, the question primarily to be settled is the right of recovery, and, as indicated in several cases, and said in the last case cited above, "the questions as to who are beneficiaries are left until distribution." In Wiltse v. Town of Tilden, 77 Wis. 152, 156, 46 N. W. 234, 236, an action by an administrator to recover for death, the court, after observing that there were allegations in the declaration sufficient to show that the mother was a person entitled to share in the distribution, said: "If there is any one else entitled, such claim can be considered on the distribution of the fund." The fund recovered is held in trust by the plaintiff, as administrator, to be distributed as the law directs (Tiffany on Death by Wrongful Act, § 89); and the statute in question here directs its distribution under any circumstances that can arise.

[3] 3. The main controversy in cases like this usually relates to the question of damages—when they are to be allowed, on what evidence, what amount, and whether limited to compensation, and, when so limited, what facts justify such compensation. The language of the statute itself is of first importance. It provides that the jury may give such damages, compensatory and exemplary, as they shall deem fair and just, taking into consideration the pecuniary injury or injuries resulting from such death to the surviving party or parties entitled to the judgment, or any interest therein, recovered in such action, and also having regard to the mitigating or aggravating circumstances attending such wrongful act, neglect, or default. That the damages may be both compensatory and exemplary is settled by the statute. The amount is to be such as the jury "shall deem fair and just." The jury fixes the compensatory damages, "taking into consideration the pecuniary injury or injuries resulting from such death." The words "pecuniary injury or injuries" are not used in a limited sense so as to embrace only the loss of money. It includes prospective pecuniary loss resulting from the death, and not more is required to show such loss than a reasonable expectation of pecuniary benefit from the life of the decedent. And this expectation need not be based on legal obligation. It is sufficient if it is based on circumstances showing the probability of such benefit. The prospective damages to the next of kin by the taking of human life are necessarily indefinite, uncertain, and contingent. They cannot be proved with an approach to accuracy, and yet they are to be estimated. This difficulty accounts for the phrase found in this and many other similar statutes, that the jury may allow such damages as they "deem fair and just." Where a child is killed, all the proof that ordinarily can be offered is the age, sex, health, habits, and disposition and temperament of the child, together with its mode of life, and the relatives who survived it, and possibly some little employment, as the selling of newspapers, as in this case.

[4] The statutes allowing damages for wrongful act or neglect causing death have for their purpose more than compensation. It is intended by them, also, to promote safety of life and limb, by making negligence that causes death costly to the wrongdoer.

[5] It would be a mockery to hold that there could be no substan-

tial recovery when children are the victims, because, at the time, they had no earning capacity. Houghkirk v. President, etc., D. & H. C. Co., 92 N. Y. 219, 44 Am. Rep. 370, was an action by her administrator for the death of a girl six years of age. The statute made the compensatory damages depend on the pecuniary loss. There was no proof as to loss except that the child was "about six years old, an only child, bright, intelligent, and healthy, and the daughter of a market gardener." The court said as to this evidence:

"These elements furnish some basis for judgment. That it is slender and inadequate is true; but it is all that is possible, and, while that should be given, more cannot be required."

That evidence was held sufficient to sustain a substantial verdict for damages based on pecuniary loss. See, also, McIntyre v. New York Central R. R. Co., 37 N. Y. 287, 295; The O. L. Hallenbeck (D. C.) 119 Fed. 468; Lockwood v. N. Y. L. E. & W. R. R. Co., 98 N. Y. 523, 526; Pennsylvania Company v. Scofield et al., 161 Fed. 911, 88 C. C. A. 602; Johnson, Adm'r, v. Chicago & Northwestern R. Co., 64. Wis. 425, 431, 25 N. W. 223. In Railroad Company v. Barron, 5 Wall. 90, 93 (18 L. Ed. 591), the court had before it a suit based on a statute like the one before us, and which allowed the jury "to give such damages as they shall deem fair and just compensation with reference to the pecuniary injuries resulting from such death," etc. The court approved the following charge given by the trial court:

"We do not think it requisite to prove present actual pecuniary loss. It can rarely be done. The attempt to do it would substitute the opinion of witnesses for the conclusions of the jury. The facts proved will enable the jury to decide on the proper measure of responsibility. Some cases are harder than others, and the law intends that the jury shall discriminate in different cases. There is no fixed measure of damages, and no artificial rule by which the damages in a given case can be computed."

The opinion is very instructive, showing that the case on the question of damages must go to the jury, although the evidence is necessarily inadequate and uncertain. The practical result of these cases is that it is incumbent on the jury from such evidence as is offered to estimate as best they can the value of the life to those concerned. If there is evidence of direct pecuniary loss, the verdict may be based on it in whole or in part. If there is no such direct evidence, they may, nevertheless, estimate the prospective pecuniary loss, considering the age, health, condition, etc., of the decedent, together with any other relevant facts and circumstances.

The statute, it will be noted, gives the right to receive the damages to certain named kindred of the decedent, providing the order in which they are respectively preferred. From this provision the Supreme Court of the territory of New Mexico has held that in estimating the compensatory damages the amount would be the same, whether it was to go to one of the named beneficiaries or another.

The court said:

"It must be considered, however, that as our statute gives a right of recovery to any one who is of kin in the same way that it gives it to the wife and children of deceased, merely prescribing who are prior distributees of

what is recovered, the rules for estimating the loss in each case should be the same. Such a rule must be that from the proof as to age, earning capacity, health, habits, and probable duration of life the jury shall say what is the present worth of the life of deceased, with nothing to be added by way of consolation to the parties or party entitled as distributees to the proceeds of recovery, and nothing for suffering or anguish of mind or body by the deceased. It is resolved into a cold question of dollars, with sentiment in no way to be taken into account. Neither does the question of mitigating or aggravating circumstances have any weight so far as the damages denominated by our statute 'compensatory' are concerned. If there should be a recovery, full compensation should be awarded, mitigating or aggravating circumstances having effect only on the question of allowing or not allowing exemplary damages in addition to full compensation." Cerillos C. R. Co. v. Deserant, 9 N. M. 49, 67, 49 Pac. 807, 813.

[6] 4. The statute in express terms provides that the jury may give not only compensatory damages, but that they may also give "exemplary" damages. In estimating the amount of the latter they may have regard to the "mitigating or aggravating circumstances attending such wrongful act, neglect or default." Exemplary damages are allowed for a willful injury; that is, where there is design, purpose, and intent to do the injury. · Where the acts fall short of willful misconduct, or that entire want of care which would raise a presumption of conscious indifference to consequences, exemplary damages should not be given.

[7] Negligence in the sense of culpable indifference to consequences would be a good ground, not only on general principles, but by the terms of the statute, for the allowance of exemplary damages. Negligence which shows a reckless indifference to consequences and to the rights and safety of others is the equivalent of willful wrong, so far as. concerns the allowance of exemplary damages. 1 Sedgwick on Damages (9th Ed.) § 368; Milwaukee, etc., R. R. Co. v. Arms et al., 91 U. S. 489, 23 L. Ed. 374; United States v. Taylor (C. C.) 35 Fed. 484; Mandeville v. Courtright, 142 Fed. 97, 101, 73 C. C. A. 321, 6 L. R. A. (N. S.) 1003; Birmingham Railway & Electric Co. v. Bowers, 110 Ala. 328, 20 South. 345. And this view seems to be sustained in Cerillos C. R. R. Co. v. Deserant, supra, in construing the act on which this suit is brought. When a person from his knowledge of existing circumstances and conditions is conscious that his conduct will probably result in injury to others, and yet, with reckless indifference or disregard of the probable consequences, although he may have no intent to injure, does the act, or fails to do the act, and the injury results, there is liability for exemplary damages.

[8] Whether there·is any evidence to justify the assessment of exemplary damages is a question for the court. But where there is evidence, direct or circumstantial, from which a jury might find that the defendant had been guilty of negligence of a kind which would justify the assessment of exemplary damages, then the question is for the jury.

[9, 10] 5. The defendant in the District Court and in this court presents a defense based on section 3213 copied in the note. As we understand the contention, it is claimed that the administratrix has no right of action on the facts proved, the right of action against a common carrier being vested by section 3213 in certain named beneficiaries, and

not in the personal representative, and that the statutes in question are so construed in Romero v. Railroad, 11 N. M. 679, 72 Pac. 37. We say in passing that a decision of the court of last resort of the Territory of New Mexico, construing a statute of that territory, is entitled to great respect, but it is not altogether so controlling upon the courts of the United States as a like decision of a state court of last resort. Northern Pacific Railroad v. Hambly, 154 U. S. 349, 361, 14 Sup. Ct. 983, 38 L. Ed. 1009; Black's Law of Judicial Precedents, § 133, p. 457. But, on a careful examination of the opinion in the Romero Case, we find nothing in it, necessary to its decision, that is in conflict with our conclusion in this case. What was actually decided is correctly stated in the syllabus, to wit, "for causes of action arising under section 3213, Compiled Laws of 1897, legal representatives are not authorized to bring or maintain suit." Romero, as administrator, brought suit for $5,000 for the death of his intestate, who was run over and killed by a freight car. The decedent died from an injury sustained "by the negligent running and operation of a locomotive and train of cars by the servants" of the defendant. The suit was based on section 3213, which provides that:

"Whenever any person shall die from any injury resulting from, or occasioned by the negligence, unskillfulness or criminal intent of any officer, agent, servant or employé, whilst running, conducting or managing any locomotive, car, or train of cars, * * * the corporation, individual or individuals, in whose employ any such officer, agent, servant * * * shall be at the time such injury was committed, or who owns any such railroad, locomotive, * * * shall forfeit and pay for every person or passenger so dying, the sum of five thousand dollars. * * *"

The section then names the beneficiaries who are authorized to sue for the forfeit of $5,000, and does not authorize the suit for it by the personal representative. These facts being alleged in the declaration, the trial court sustained a demurrer to it, and the judgment was affirmed by the Supreme Court of the territory.

The plaintiff's intestate in the instant case was not killed under circumstances that would come within section 3213. He was not killed by the negligent running of a locomotive or car, etc., nor was he a passenger. A reading of the section will show that it is not applicable to this case. The suit here is based on a different section, for a violation of which the personal representative is expressly authorized to sue.

We are of the opinion that the District Court erred in directing a verdict for the defendant. The judgment is reversed, and the cause remanded for a new trial.

NOTE.—The following are sections of the Compiled Laws of New Mexico 1897:

"Sec. 3214. Whenever the death of a person shall be caused by the wrongful act, neglect or default of another, although such death shall have been caused under such circumstances as amount in law to a felony, and the act, or neglect, or default, is such as would, if death had not ensued, have entitled the party injured to maintain an action and recover damages in respect thereof, then, and in every such case, *the person* who, or *the corporation* which, would have been liable, if death had not ensued, shall be liable to an action for damages, notwithstanding the death of the person injured.

"Sec. 3215. Every such action as mentioned in the next preceding section

shall be brought by and in the name or names of *the personal representative or representatives of such deceased person*, and the jury in every such action may give such damages, *compensatory and exemplary*, as they *shall deem fair and just*, taking into consideration *the pecuniary injury or injuries* resulting from such death to *the surviving party or parties* entitled to the judgment, or any interest therein, recovered in such action, and also having regard to *the mitigating or aggravating circumstances attending such wrongful act, neglect or default.* The proceeds of any judgment obtained in any such action shall not be liable for any debt of the deceased: Provided, He or she shall have left a husband, wife, child, father, mother, brother, sister, or child or children of the deceased child, but shall be distributed as follows: First. If there be a surviving husband or wife, and no child, then to such husband or wife; if there be a surviving husband or wife and a child or children or grandchildren, then equally to each, the grandchild or grandchildren taking by right of representation; if there be no husband or wife, but a child or children, or grandchild or grandchildren, then to such child or children and grandchild or grandchildren by right of representation; if there be no child or grandchild, then to a surviving brother or sister, or brothers or sisters, if there be any; if there be none of the kindred hereinbefore named, then the proceeds of such judgment shall be disposed of in the manner authorized by law for the disposition of the personal property of deceased persons."

"Sec. 2033. If the intestate leave no issue, the whole of his estate shall go to his wife; if he leaves no wife, the portion which would have gone to her shall go to his parents. If one of his parents be dead, the portion which would have gone to such deceased parent, *shall go to the surviving parent.*"

The defendant cited the following section:

"Sec. 3213. Whenever any person shall die from any injury resulting from, or occasioned by the negligence, unskillfulness or criminal intent of any officer, agent, servant or employé, *whilst running, conducting or managing any locomotive, car, or train of cars,* or of any driver of any stage coach or other public conveyance, while in charge of the same as driver; and when any *passenger shall die* from any injury resulting from, or occasioned by any defect or insufficiency in any railroad, or any part thereof, or in any locomotive or car, or in any stage coach, or other public conveyance, the corporation, individual or individuals, in whose employ any such officer, agent, servant, employé, engineer or driver, shall be at the time such injury was committed, or who owns any such railroad, locomotive, car, stagecoach, or other public conveyance, at the time any injury is received, resulting from, or occasioned by any defect or insufficiency above declared, *shall forfeit and pay for every person or passenger so dying, the sum of five thousand dollars,* which may be sued and recovered: First, *by the husband or wife* of the deceased; or, second, if there be no husband or wife, or if he or she fails to sue within six months after such death, *then by the minor child or children of the deceased;* or, third, if such deceased be a minor and unmarried, then by the father and mother, who may join in the suit, and each shall have an equal interest in the judgment; or if either of them be dead, then by the survivor. In suits instituted *under this section,* it shall be competent for the defendant for his defense to show that the defect or insufficiency named in this section, was not of a negligent defect or insufficiency."